Mr. Justice CATROR
delivered the opinion of the court.
Forsyth sued Bryan and Rouse in ejectment for part of lot No. 7, in the town of Peoria, in the State of Illinois. The action was founded on a patent to Forsyth, from the United States,.dated the 16th day of December, 1845, which patent was given in evidence on the trial in the Creuit Court. It was admitted that the .defendants were in possession when they were sued, and that they held possession within the bounds of the patent. To overcome this prima facie title, the defendants gave in evidence a patent from the United States to John L. Bogardus, containing twenty-three acres, dated January 5th, 1838, which, included lot No. 7. To overreach this elder patent, the plaintiff relied on an act of Congress, passed May 15, *335 1820, for the relief of the inhabitants of the village of Peoria, providing that' every person who claims a lot in said village shall, on or before the first day of October next, deliver to the register of the land office for the district of Edwardsville a notice in writing of his -or her claim; and it was made the duty of the register to make a report to the Secretary of the Treasury of all claims filed, with the substance of the evidence in support thereof, and also his opinion, and such remarks respecting the claims as he might think proper to make; which .report, together with a list of the claims which, in the opinion of the register, ought to be confirmed, shall be laid by the Secretary before Congress, for their determination.
The report was made, and laid before Congress, in January, 1821. As respected lot Ho. 7, (a part of which is in dispute,) the register reported that Thomas Forsyth claimed it; that it was' three hundred feet square, Ereneh measure, situate in the village of Peoria, and- hounded eastwardly by a street; separating it from the Illinois river; northwardly by a cross street, westwardly by a back street, and southwardly by a lot claimed by JacquesMette. The remark of the register is: “A.part of this lot must have been embraced by the lot claimed by Augustine Rogue.” Rogue’s claim (Ho. 2) was for a lot of about an arpent, and bounded, says the register, northwardly by a lot occupied by Maillette, eastwardly by a road separating it from Illinois river, and southwardly and westwardly by the prairie.
The register reported on seventy lots in all. A survey to designate boundaries among the claimants was indispensable, as they were in considerable confusion. Congress again legislated on the subject, by act of March 3, 1823, and provided that each of the settlers, whose names were contained in the report, who had settled a village lot prior to the first of January, 1813, should be entitled thereto; the lot so settled on and improved,- not to exceed two acres; and where it exceeded two acres, such claimant should be confirmed in a quantity not exceeding ten acres. It was made the duty :of the surveyor of public lands for the district, to cause a survey to be made of the several lots, and to designate on a plat thereof the lot bon-firmed and set apart to each claimant, and forward the same to the Secretary of the Treasury, who shall (says the' act) cause patents to be issued in favor of each, claimant, as in other cases.
The survey was made in 1840, by order of the surveyor general of Illinois and Missouri, winch was duly returned, approved, and recorded. We are of opinion that the act of 1823 conferred on the grantee an incipient title, and reserved to the *336 executive department administering the public lands the authority to settle the boundaries by actual survey among the claimants; and until this was done, the courts of justice could not interfere and establish boundaries. It was competent for Congress to provide, that before a title should - be given to a confirmee, the exact limits of his confirmation should be ascertained by a survey executed by authority of the United States. (West v. Cochran, 17 How., 415.)
When the surveys were made, and the plats returned and approved, and recorded by the surveyor general of Illinois and Missouri, and recognised as valid at the General Land Office, (as the patent to Eorsyth shows it was,) it bound the parties to it, the confirmee and the United States; nor can either side be heard to deny, that the land granted by the act of 1823 is the precise lot Eorsyth was entitled to; such being the settled doctrine of this court. (Menard’s Heirs v. Massey, 8 How., 313.) Heither can Bogardus or his assignee deny that he was concluded by the survey. His patent grants the land to him in fee, “subject, however, to all the rights of any and all persons claiming under the act' of Congress of 3d March, 1823, entitled ‘An act to confirm certain claims to lots in the village of Peoria, in the State of Illinois.’ ” This patent is the only title set up by the defendants below; by its terms, all power to perfect the title of Eorsyth, according to the act of 1823, was reserved to and retained by the department of public lands, as effectually after the Bogardus patent was issued as before.
The survey having bound the United States, and concluded Bogardus, Eorsyth had a title by virtue of the acts of 1820 and 1823, and the survey, which was of a legal character; and he could maintain an action of ejectment on it, even had no patent issued; This is true beyond controversy, if the action had been prosecuted in a State court, where the.State laws authorized suits in ejectment on imperfect titles. (Ross v. Borland, 1 Pet., 655; Chouteau v. Eckhard, 2 How., 372.)
But it is insisted that in the courts of the United States a; different rule applies, and that, as a patent carries the fee, it is the better title. The case of Robinson v. Campbell (3 Wheat., 212) is supposed to be to this effect. There, the conflicting patents were made by the Commonwealth of Virginia, and the defendant attempted to prove that a settlement had been made on the land in dispute by one Eitzgerald, and which preference right had -been .assigned to Martin, who obtained a certificate from, the commissioners for adjusting titles to unpatented lands; -which certificate was of anterior date to the junior patent, and was the source of title. It was nothing more than evidence that Martin had a preference to purchase the land,- if *337 lie saw proper to do so; and was not competent evidence in an action of ejectment, according to the laws of. Virginia, or even of Tennessee. It was not an entry founded on consideration, bnt a right of abating an equity at tbe discretion of the settler. Neither in Virginia nor Kentucky (where the Virginia land laws prevail) is the defendant allowed to go behind the patent in a court of lato, in order to give the patent a date from that of the entry on which the patent was founded.
The question here is, on the effects of acts of Congress confirming claims to lands as valid, by which legislation the Government is concluded; and as respects these, it is settled, that after a survey is duly made, approved, and recorded at the surveyor general’s office, an action of ejectment may be maintained on such titles in the courts of the United States. It is a good prima facie title. (Stoddard v. Chambers, 2 How., 313; Le Bois v. Bramell, 4 How., 456; Bissell v. Penrose, 8 How., 317.) In Stoddard v. Chambers, this court held “that a confirmation by act of Congress vests in the confirmee the right of the United States, and a patent, if issued, could only be evidence of this.” Other cases followed this decision. By the third section of the act of July 4, 1836, it is provided that a patent shall issue to the confirmee'in cases confirmed by that act. In this respect, the.provisions of the acts of 1823 and 1836 are alike.
Of course the patent in this instance can relate to a title which .is valid against an.other title unaided by the younger patent.
This disposes of the exception taken by the defendants below to the ruling of the court, that Eorsyth’s title was superior to-that of Bogardus;
They next ask the court to instruct the jury, that by the laws of Illinois they had such title as would bar an action of ejectment after seven years, accompanied by actual residence on the land sued for; and if the jury believe from the evidence that the defendants have so long had said possession,, the plaintiff cannot succeed in this suit. There were two other instructions asked, requiring the court to instruct the- juay that the plaintiff’s action was barred by the act of limitations of twe'nty years.
The court refused to instruct as requested; “but, on the contrary, instructed the jury that the patent to Bogardus did not grant-or convey the ground in controversy; and it being conceded that-it iyas the.only-title the defendant had, there is no such title as -under' the statute of limitations protects the-possession of the defendants.” This instruction was- founded on an exception in the patent to Bogardus. It grants to him,. *338 and to h.is heirs and assigns, forever, “subject, however, to all the rights of any and all persons under the act of Congress of March 3d, 1823, entitled ‘ An act to confirm certain claims to lots in the village of Peoria, in the State of Illinois.’ ”
When this patent was made, in 1838, the village lots had not been surveyed, and those that interfered with the land granted to Bogardus might never he claimed. Subject to this contingency he took his patent, and had a title in fee till 1840, when the village title of Eorsyth was ripened into the better right. After that, those claiming under Bogardus held the position of one who claims protection by' the act of limitations under a younger patent against an elder one. He has only the appearance of title. The patent to .Bogardus was a fee-simple title on its face, and is such title as wifi afford protection to those claiming under it, either directly, or, having a title connected with it, With possession for seven years, as required by the statute of Illinois^ The court below erred in cutting off this defence.
In the progress of the trial in the Circuit Court, the plaintiff offered in evidence the printed report of Edward Coles,'the register of the.land office at Edwardsville, as found in the American State Papers, vol. 3, from pages 421 to 431, inclusive, to which the defendant objected, because it was not, without proof of its authenticity, legal evidence. But the court overruled the objection, and.the report was given in evidence to the'jury, to which ruling the defendants excepted.
These State Papers were published by order of Congress, and ©elected and edited by the Secretary of the Senate, and Clerk ■of the House. They contain copies of legislative and executive ¡documents, and are as valid evidence as the originals are from which they were copied; and it cannot be denied that a record •of the report of Edward Coles, as found in the printed journals ■of Congress, could be read on mere inspection as evidence that It was the report sent in by the Secretary of the Treasury. ’The competency of these documents as evidence in the investigation of claims to lands in the courts of justice has not been controverted for twenty years, and is not open to controversy.
It is ordered that the judgment be reversed, and the cause remanded ft r another trial.