## GREGG *vs.* TESSON.

1.. A patent for a quarter section of land subject to French claims, confirmed by Congress in 1823, is not a good title for a lot within the quarter section, as against a French claimant under the confirming act whose survey of the lot was made in 1840 and his patent issued in 1846.

2. But if the patentee of the quarter section was in possession of part and claimed the whole of it under his patent for more than seven years before suit brought, and the claimant of the lot was not in possession at all, the party so in possession is protected by the Illinois statute of limitations.

3. If the title to land be cast by descent on a married woman, her husband having a life estate, may bring ejectment; if he fails to do so for seven years, the statute of limitations will bar his right; and if he and his wife convey their title to another, their grantee cannot recover after the expiration of seven years from the time when the limitation first began to run against the husband.

4. Whether a child born in Missouri before the marriage of her parents, when the civil law prevailed in that Territory, can inherit the lands of her father in Illinois, where the common law was in force at the time of the father's death— *Quere ?*

Writ of error to the District Court for the northern district of Illinois.

By an act of Congress approved May 15, 1820, all persons claiming lots in the village of Peoria, Illinois, which had just been destroyed by fire, were required to furnish to the register of the land office at Edwardsville a written notice of their respective claims before the first of the ensuing October. It was made the duty of the register by the same act to report to the Secretary of the Treasury a list of these claims, with the substance of the evidence in support of them, and his opinion of their value; and this report the Secretary of the Treasury was directed to lay before Congress for its determination. On the 3d of March, 1823, Congress confirmed, under certain restrictions, to the persons in whose favor the register at Edwardsville had reported, the lots they claimed. Among the persons

*Gregg* vs. *Tesson.*

entitled to lots under the act of 1823 was Antoine Roi, who claimed lot 33, the same which is now in dispute. A survey was made of these lots in 1840, and a patent issued to the legal representatives of Roi in 1846. On the 20th of June, 1849, Mary Gendron, claiming to be the only heir of Antoine Roi, by a joint deed of herself and Toussaint Gendron, her husband, conveyed the lot in question to Tesson and Rankin for the consideration of fifty dollars, and in 1854 Tesson brought this ejectment in the Circuit Court against Richard Gregg, who claimed the same lot and held adverse possession of it under Charles Ballance. Ballance had obtained a patent in 1838 for a fractional quarter section of land, comprehending the lot afterwards patented to Roi. But Ballance's patent was expressly "subject to the rights of any and all persons claiming under the act of Congress of 3d March, 1823." Ballance and his tenants had been in possession of the fractional quarter section patented to him about twenty years at the time when this suit was brought.

That Mary Gendron was the lawful child and heir of Antoine Roi was matter of fact asserted on one side and denied on the other. She was born in Missouri, in 1814, and there was some evidence that Antoine Roi acknowledged her and married her mother about three months after her birth.

The court instructed the jury that the title of Ballance, under his patent, did not include, and was not intended to include, the lot in controversy, if there was anybody capable of taking it under the act of 1823; that until there was a survey made and approved of these French lots, the statute of limitations would not begin to run; that Ballance's possession of a part of the quarter was not in law a possession of the whole, and the statute, therefore, did not protect him against the plaintiff's better right; that Mrs. Gendron was legitimate in Missouri if her parents were married there after her birth, and being legitimate in Missouri, she could inherit her father's land in Illinois.

These rulings being excepted to, and the verdict and judgment being for the plaintiff, the defendant took this writ of error.

*Mr. Ballance,* of Illinois, for the plaintiff in error

*Mr. Browning,* of Illinois, contra.

Mr. Justice NELSON.   This is a writ of error to the Circuit Court of the United States for the northern district of Illinois.

The action was ejectment, brought by Tesson against Gregg, to recover possession of lot No. 33, the claim of Antoine Roi, as reported under the confirmatory acts of Congress of 15th May, 1820, and of 3d March, 1823, in respect to French inhabitants or settlers of lots in the village of Peoria.   A survey was made of these lots in 1840, and a patent issued to the representatives of Antoine in 1846.

The plaintiff claims under this title.

The defendant sets up a right to the possession, under Charles Ballance.   The latter claims title under a patent from the Government, in 1838, of the southwest fractional quarter section nine, in township 8 north, range two east, in the district of lands subject to sale at Quincy, Illinois.   This patent contained the following saving clause : " Subject, however, to the rights of any and all persons claiming under the act of Congress of 3d March, 1823, entitled 'An act to confirm certain claims to lots in the village of Peoria, in the State of Illinois.' "   The French lot No. 33, in question, confirmed by the act of 3d March, 1823, is within this fractional quarter section above patented to Ballance.

If the question in the case stood upon the mere paper title to this lot, there could be no great difficulty in disposing of it; for, although the patent of Ballance is the elder, yet, as he took it subject to the French confirmed title, the latter must prevail.

But this court held, in the case of *Bryan* vs. *Forsyth,* (19 How., 334,) for the reasons there given, that the patent of the fractional quarter section to Ballance, though subject to the saving clause mentioned, afforded ground in favor of persons claiming under it of an adverse possession within the statute of limitation of Illinois, against the French lots, after the sur

vey and designation of them in 1840. Several cases have arisen since that decision in the State courts of Illinois, and also in this court, and the doctrine of the case of *Bryan* vs. *Forsyth* adopted and applied. *Landers* vs. *Kidder*, (23 Ill. R., 49;) and *Williams* vs. *Ballance*, (ib., p. 193;) *Mechan* vs. *Forsyth*, (24 How., 175;) and *Gregg* vs. *Forsyth*, (ib., 179.)

The act of limitations of Illinois, Rev. Stat., 349, sec. 8, protects the claim of persons for lands which has been possessed by actual residence thereon, having a connected title in law or equity, deducible of record from that State or the United States.

The question contested upon this statute, since the case of *Bryan* vs. *Forsyth*, has been, as to the nature and character of the possession of Ballance, and those claiming under him, required by the statute, which is essential to constitute the bar. On the part of those claiming under the French lots, it has been insisted, that the *actual residence thereon* for the seven years must have been on the French lot; and that an actual residence on the fractional quarter section, under and by virtue of the patent to Ballance, claiming at the time the whole section, did not raise an adverse possession, within the act. But the court of the State of Illinois, in the two cases above referred to, adopted the broader construction; and this court agreed with them in the two cases already referred to.

As we understand the cases, both in this and in the State court of Illinois, they hold that the actual residence of Ballance, by himself or by his tenants under him, upon the fractional quarter section, cultivating and improving the same, and claiming title to the whole under his patent, for the period of seven years since the survey and designation of the French lots in 1840, operate as a bar to the right of entry, within the true meaning of the seven years' statute of limitations. These cases have been so often before the court, and so fully considered heretofore, that we shall do no more than state the principles decided in them.

The suit in this case was commenced in 1854, and the actual residence of Ballance, by himself and tenants, began in 1834, and continued down to the commencement of the suit.

A point has been made on the part of the plaintiff, that the statute cannot run against him, on the ground that, at the time of the commencement of the adverse possession, Mrs. Gendron, the daughter and heir of Antoine, and through whom the plaintiff derives title, was a feme covert, and within the saving clause of the statute of limitations; and that the seven years has not elapsed since she parted with her title. But the answer to this is, that her husband, who joined her in the deed, is still alive; and as he had a life estate in the lot, and was competent to sue for the recovery of it, the statute ran against him; and the purchaser from or through him took the estate subject to the operation of this limitation. Mrs. Gendron and husband conveyed in 1849, while the statute was running against the husband. The grantee, or those coming in under him, should have brought the suit for the husband's interest within the seven years. After the termination of the life estate, the person holding the interest in remainder may then bring a suit to recover the estate of the wife.

The defence in this case was placed, also, upon another ground, which it may be proper to notice. Mrs. Gendron, through whom and her husband the plaintiff derives title, was the daughter of Antoine, the French claimant, and was born, as alleged, some three months before the marriage of Antoine to the mother—was, therefore, illegitimate, and incapable of inheriting the lot from her father, who, it is supposed, died about 1820. The birth and subsequent marriage, however, took place in the Territory of Missouri in 1814, when the civil law prevailed in that Territory, which legitimates the child by a subsequent marriage. But as the lands in question are situate within the State of Illinois, in which State, and in the Territory preceding it, the common law, as alleged, prevailed at the time of the death of Antoine, and the descent cast, it is claimed, within the case of *Birth Whistle* vs. *Vardell*, (5 Bar. & Cross, 430, and 7 Clark & Finnelly, 895,) which held that a child born in Scotland, where the civil law prevails, and which was legitimated by the subsequent marriage of the parents, could not inherit lands in England, as, in case of an inheritance at common law, the child must be born within lawful

*Gregg* vs. *Tesson.*

wedlock. Mrs. Gendron did not inherit the lot in question, and hence the deed from her and husband conveyed no title to the plaintiff.

How the law may be on this subject in the State of Illinois we do not deem it material to inquire, as the evidence in the case is not sufficiently full nor exact to raise the question. The Territory of Illinois was admitted as a State into the Union in 1818. The time of the death of Antoine is not proved; whether during the territorial government, or the State, is uncertain. Until that fact is established, it would be difficult, if not impossible, to determine the state of the law at the time of the descent cast, on the subject.

This question has been one of great difficulty in England, but was ultimately decided against the Scotch heir, with the concurrence of all the judges. The difficulties attending the question in this country, when it arises, will not be diminished, unless settled by the express law of the State within which the lands may be situate.

As it will be seen, on reference to the instruction given to the jury, that they are in conflict with the views expressed of the law on the question of adverse possession, the judgment must be reversed, and the case remitted for a venire de novo.

*Judgment reversed and venire facias de novo.* *

----

* Mr. Justice *Nelson* also delivered the opinion of the court in the case of *Gregg* vs. *Bryant*, a writ of error to the District Court, scuthern district, Illinois, in which the same points were decided in the same way as in *Gregg* vs. *Tesson*