In the circumstances of this case the court is unable to grant relator's demand.

Judgment affirmed.

Rehearing denied by the WHOLE COURT.

(98 South. 662)

No. 25741.

## LEWIS et al. v. STANDARD OIL CO. OF LOUISIANA.

(Oct. 22, 1923. Rehearing Denied Jan. 7, 1924.)

*(Syllabus by Editorial Staff.)*

Adverse possession ☞103 — Prescription; good-faith purchaser held to have title by prescription as against claimant of part thereof never in possession.

In view of Code, arts. 3437, 3478, 3479, 3483, 3487, 3498, relating to titles by prescription, where an owner of 40 acres of land sold three acres thereof and subsequently sold the entire 40 acres to others, who entered in good faith and occupied part of the tract, with the bona fide belief that they had acquired the whole tract, they acquired a perfect title by prescription after the expiration of 10 years; the purchaser of the 3-acre tract not having taken possession thereof.

Overton, J., dissenting.

Appeal from Third Judicial District Court, Parish of Claiborne; J. E. Reynolds, Judge.

Action by Alice White Lewis and others against the Standard Oil Company of Louisiana. Judgment for defendant, and plaintiffs appeal. Affirmed.

Edward Barnett, Thigpen, Herold & Lee, Tinsley Gilmer, and Gilmer & Cousin, all of Shreveport, for appellants.

T. M. Milling, F. L. Hargrove, and A. P. Garland, all of Shreveport, for appellee Standard Oil Co. of Louisiana.

J. E. Moore, of Homer, and Blanchard, Goldstein & Walker, of Shreveport, for F. T. and J. H. King, called in warranty.

McClendon, Morelock & Seals, of Homer, for widow and heirs of W. C. Murrell, called in warranty.

By the WHOLE COURT.

DAWKINS, J. Prior to 1887 W. C. Murrell was the owner of the northeast quarter

of the southwest quarter of section 25, township 21 north, range 8 west. In that year, he sold to John White colored, "three acres square in the southeast corner of the northeast quarter of the southwest quarter, section 25, township 21 north, range 8 west," for the price of $9; and in 1904 the said Murrell sold the whole of said 40 acres, including the small area just described, to F. T. and J. H. King, for $500.

About the beginning of 1919 oil was discovered in Claiborne parish, and, the Messrs. King having leased the whole of the tract to the Standard Oil Company of Louisiana, the latter, during the year 1920, drilled two producing wells upon the smaller or "three-acre" tract first sold to John White located in the southeast corner of the 40.

Thereupon the widow and heirs of White (February 25, 1921) filed this suit against the said company, charging it to be a trespasser, and claiming the oil produced and to be produced from the property. Defendant called the Messrs. King in warranty who set up their title acquired from Murrell in 1904, and pleaded the prescription of 10 years, acquirendi causa, under articles 3478 to 3498 of Code, claiming possession in good faith under title translative of property as required by those provisions of law.

The court below sustained the plea of prescription and rejected plaintiffs' demands.

### Opinion.

The court below found, and we think the record establishes, that the warrantors in good faith went into actual possession of the northern end (probably 15 acres) of the 40-acre tract, more than 10 years before the filing of this suit. We are also of the opinion that the evidence as to any actual possession by plaintiffs does not sustain that contention.

Therefore the legal question which we are called upon to answer is: Where one person holds the older recorded title, without possession, of a portion of land which is included within a larger tract subsequently sold by the same vendor to another, and the latter goes into actual possession in good faith of a part of such larger tract, which actual possession does not embrace the smaller tract, does the second purchaser acquire title to the whole under his deed by the prescription of 10 years acquirendi causa provided by the Code?

There is much to be said against that result; the most potent of which is that the owner of property, who finds no one in actual possession from time to time, is justified in assuming that he is the only claimant, and that no adverse rights are accruing against him, such as arise from prescription, since there are no visible signs or warnings to put him on his guard. However, simplicity of titles is favored by the very spirit of our law, and in specific terms every one is charged with knowledge of the public record. Equally emphatic are the provisions of the Code, which read:

3478. "He who acquires an immovable in good faith and by a just title, prescribes for it in ten years."

3479. "To acquire the ownership of immovables by the * * * prescription which forms the subject of the present paragraph, four conditions must concur:

"1. Good faith on the part of the possessor.

"2. A title which shall be legal, and sufficient to transfer the property.

"3. Possession during the time required by law, which possession must be accompanied by the incidents hereafter required.

"4. And finally an object which may be acquired by prescription."

3483. "To be able to acquire by the species of prescription mentioned in this paragraph, a legal and transferable title of ownership in the possessor is necessary; this is what is called in law a just title."

3487. "To enable one to plead the prescription treated of in this paragraph, it is necessary that the possession be distinguished by the following incidents:

"1. That the possessor shall have held the thing in fact and in right, as owner; when,

however, it is only necessary to complete a possession already begun, the civil possession shall suffice, provided it has been preceded by the corporal possession.

"2.. That the possession shall have been continuous and uninterrupted, peaceable, public and unequivocal; a *clandestine possession would give no right to prescribe; but he who possesses by virtue of a title cannot be considered as a clandestine possessor, for his title leads to the supposition that the possession commenced in good faith, and that is sufficient to enable him to plead prescription.*"

3498. "*When a person has a title and possession conformably to it, he is presumed to possess according to the title and to the full extent of its limits.*"

3437. "*It is not necessary, however, that a person wishing to take possession of an estate should pass over every part of it; it is sufficient if he enters on and occupies a part of the land, provided it be with the intention of possessing all that is included within the boundaries.*"

The plain and reasonable meaning of these articles would seem to be that, where one purchases a parcel of land from another who purports to be the owner thereof, and the vendee in good faith and with the bona fide belief that he has acquired the whole, goes into. actual possession of a part with intention of possession to the full extent of his title, he thereby acquires a perfect title to the whole after the expiration of 10 years, unless that possession has been interrupted in the meantime by the adverse possession of another, or some other legal claim or proceeding made or instituted within that period. To say that, because some one who never had any possession with a dormant claim to a portion of the property may still assert the same after that time, merely because the party relying upon prescription did not actually occupy that particular area, is to destroy the very purpose of security which the above-quoted provisions were intended to afford, and to require of one with title, at least against the claims of such third persons, the same species of possession—foot by foot—as is provided un-

der the 30 years' prescription of the Code without title, when the very letter of the Code is to the contrary. Such a construction would render it impossible for one examining a title to say that an owner who had possessed under his title for ten years might rest secure; but would still require a test of title to every portion, however small, embraced therein, if it happened to fall without the area actually occupied. See New Orleans Terminal Co. v. Luckner, 147 La. 967, 86 South. 411; Leader Realty Co. v. Taylor, 147 La. 256, 84 South. 648; Eiver's Heirs v. Rankin's Heirs, 150 La. 4, 90 South. 419; and authorities cited in these cases.

See, also, Gregg v. Tesson, 1 Black (66 U. S.) 150, 17 L. Ed. 74; Dredge v. Forsyth, 2 Black 571, 17 L. Ed. 255.

It is possible that hardship may flow from the conclusion reached herein, but it appears to be sustained by our jurisprudence, which is nothing more than a literal application of the Code. However, if such be the case, and the public welfare should require, the Legislature has the power, not possessed by this court, to modify the law in such manner as in its judgment may appear just and proper.

For the reasons assigned, the judgment appealed from is affirmed, with costs.

OVERTON, J., dissents.