UNITED STATES v. 12,918.28 ACRES OF LAND IN WEBSTER PARISH, LA., et al.

In re TRACT NO. A–39.

No. 498.

District Court, W. D. Louisiana, Shreveport Division.

April 3, 1948.

R. D. Watkins, of Minden, La., and Robert Roberts, Jr., of Shreveport, La., for T. Crichton, claimant.

Drew & Drew, of Minden, La., for A. D. Turner, claimant.

PORTERIE, District Judge.

This suit involves the title to the Northwest Quarter of the Southwest Quarter of Section 8, Township 18 North, Range 9 West, Webster Parish, Louisiana, which tract of land is part and parcel of Lot 11 of the same township and range.

This property was taken by the United States Government and there is on deposit in the Clerk's Office in Shreveport a sufficient amount to cover the valuation, and this contest arises over the ownership of the land which in turn entitles the owner to the money involved.

A. D. Turner, one of the claimants, contends that this is part and parcel of his Allen Plantation consisting of the East Half of the Northeast Quarter and the North Half of the South Half of Section 8, Township 18 North, Range 9 West, containing 240 acres, more or less, and pleads the prescription of ten and thirty years, as well as introducing the proof of title.

The Crichton heirs, the Goodwill heirs and Mrs. Saucier are the opponents, claiming that this was part and parcel of a large tract of land of which they own one-third each; but Mrs. Saucier admits in her pleadings that A. D. Turner was the owner of the property and had been for years and only sets up her one-third claim in the event that the said Turner was not successful in maintaining title, in which event, if the Crichtons and Goodwills are successful, Mrs. Saucier contends that she should have her one-third.

In the recent case of Crichton v. Saucier, 5 Cir. 1947, 159 F.2d 303, the United States Circuit Court of Appeals, in affirming this court (cf. United States v. 12,918.28 Acres of Land in Webster Parish, La., et al., D.C., 1945, 61 F.Supp. 545) relative to this exact tract of land, held, that Crichton had not exercised such possession that would entitle him to maintain the plea of ten- or thirty-year prescription. We quote part of the language of the Circuit Court:

"We agree with the district court that Saucier has acquired by his two deeds, as against the Crichtons, the interest in the lands owner by Thomas B. Neal at his death in 1902, and that the Crichtons, if co-owners, have acquired no greater title by prescription than their deed from Neal gave them." Crichton v. Saucier, supra, at page 304 of 159 F.2d.

The Goodwill interest claimed the same possession as the Crichtons; and, therefore, their prescription as pleaded by Thomas Crichton and Goodwill heirs has no more foundation in this contest than it had in the original suit with Saucier, and

this part of the case depends solely on their title.

The plea of prescription of ten and thirty years interposed by Turner is of more merit and will be discussed later in this opinion. But it appears to us that this case can be decided solely on the question of title.

The undisputed facts are as follows:

On March 2, 1849, the state of Louisiana selected, under the Swamp Land Grant, all of Section 8, Township 18 North, Range 9 West, which property covers the land in contest.

On January 10, 1860, George W. Wren entered the above described property, together with other land, and this entry was followed by a patent dated January 26, 1860.

From the time George W. Wren acquired this property it has descended by mesne conveyances to the present owner, A. D. Turner.

The property at that time was described by the state of Louisiana as being the North Half of the Southwest Quarter of Section 8, Township 18 North, Range 9 West, and patent was issued on this description.

On January 23, 1864, the state of Louisiana issued a patent to Henry M. Hyams covering Lot 11 of Section 8, Township 18, Range 9, and in this respect the duplication of lands began.

For the purpose of clarity, that part of the Northwest Quarter of the Southwest Quarter of Section 8, West of Dorcheat Bayou contains approximately 36 acres and is part and parcel of Lot 11 of the same section, which contains 58.35 acres.

That part of the Northwest Quarter of the Southwest Quarter of Section 8 West of Dorcheat Bayou having been patented in the year 1860, gave to the patentee at that time a good title to the 36 acres of land, and when Lot 11 was patented to Hyams in 1864, the said Hyams acquired all of Lot 11 less that part which had previously been patented to Wren; therefore, Hyams received by his patent 58.35 acres less the 36 acres then owned by Wren, leaving to him 22.35 acres.

It was this duplication of patents that created the misunderstanding that brings about the present lawsuit. It naturally follows that when the state of Louisiana divested itself of ownership in the Northwest Quarter of the Southwest Quarter of Section 8 in 1860, that it had no further interest therein and could not by any act transfer any interest to that part of the property in 1864.

Therefore, that part of the Northwest Quarter of the Southwest Quarter of Section 8 now in contest never at any time belonged to Hyams and could not be transferred or conveyed by him to any one by a valid title and title thereto in his line of descent could only be acquired by prescription of ten or thirty years, which this court has previously held is not substantiated by the facts.

In support of Turner's title it is shown that after the property was acquired by Wren that it went through the Wren estate and in 1904 was transferred to Lewis Allen, and out of the Allen estate it came into the ownership and possession of Burnett, Wren and Turner on March 12, 1914. A. D. Turner was a one-third owner of the partnership of Burnett, Wren and Turner.

The proof is that at the time of acquiring this property in 1914, that A. D. Turner, acting for the firm of Burnett, Wren and Turner, employed R. C. Drew, Parish Surveyor, to go on this property and survey the lines and to appropriately mark it. The proof is that the corner was established on the Northwest Quarter of the Southwest Quarter of Section 8, west of Dorcheat Bayou, and that from that time in the year 1914 to the present time no one has ever opposed the ownership of Burnett, Wren and Turner, later acquired by Wren and Turner by the purchase of Burnett's interest, and now by A. D. Turner by the purchase of Wren's interest.

This 36 acres of land was part and parcel of 240 acres that came into Burnett, Wren and Turner in 1914, and the question has been raised that the possession and ownership of the 240 acres, the cultivation thereof, the building of houses and the enclosure of the property could

not be interpreted as possession on this 36 acres of land which is west of Dorcheat Bayou. The reason offered is that Dorcheat Bayou is a navigable stream which, if so, would have merit; but as the court remembers, there is no proof in this case offered by anyone that Dorcheat Bayou is and was a navigable stream and such being the case this court cannot take judicial cognizance of a fact of which it has no knowledge.

For the sake of argument, presuming that Dorcheat Bayou was a navigable stream, we find that in 1914 this property was surveyed by a registered engineer whose survey was accepted by the court in the contest with Braswell, and lines established. Now the question comes up as to how well the lines were established and whether the public was placed on guard as to this ownership by these markings. We have only to look at the testimony of Mr. Gladden Willis as to the distinct markings of the survey on the land in contest west of Dorcheat Bayou.

Mr. Willis testified that he was busily engaged in and had been engaged for some time on the Tom Crichton-Goodwill-Saucier property cutting timber under contract with Mr. Crichton, and that when he came to this 36 acres which is that part of the Northwest Quarter of the Southwest Quarter of Section 8 west of Dorcheat Bayou, his timber man apprised him that there had been a recent survey and the lines definitely marked and that it evidently belonged to someone other than the Crichton-Goodwill combination. Following this, he found that the property had recently been purchased by Burnett, Wren & Turner, that they had surveyed it and that he went to A. D. Turner and purchased the timber on this property.

This testimony is most pertinent for the reason that the purchaser of this timber had already purchased the timber that the Crichtons and Goodwills had, and his notice of the lines and his actions subsequently clearly indicate that the possession at that time by Burnett, Wren & Turner was open and notorious and was sufficient to start the running of either the ten or the thirty years prescription pleaded.

After that time we find that on March 30, 1916, Burnett, Wren & Turner executed an oil and gas lease covering this property.

On January 25, 1923, W. T. Burnett sold his interest to A. D. Turner and L. P. Wren.

On February 11, 1925, A. D. Turner and L. P. Wren executed a notarial mortgage covering this property, and a similar mortgage was executed on June 29, 1928.

On March 2, 1929, A. D. Turner and L. P. Wren leased a right of way to the Riverside Gravel Company who constructed across this property a small railroad for the transportation of gravel.

Proof was by numerous witnesses that the part of the Northwest Quarter of the Southwest Quarter of Section 8, east of Dorcheat Bayou, was under fence, that a house had been constructed and part of this property cultivated continuously since 1914 to the present time.

The question is whether possession of part would give possession of the whole sufficient to maintain the prescription of ten and thirty years.

The law is clear as to the ten-year prescription to form the basis of the ten-year acquisitive prescription.

Article 3478 of the Louisiana Civil Code, dealing with the prescription of ten years, provides:

"He who acquires an immovable in good faith and by just title prescribes for it in ten years. This prescription shall run against interdicts, married women, absentees and all others now excepted by law; and as to minors this prescription shall accrue and apply in twenty-two years from the date of the birth of said minor; provided that this prescription once it has begun to run against a party shall not be interrupted in favor of any minor heirs of said party."

Our courts have held that the crux of this prescription is the good faith of the owner at the time he acquired. Barrow v. Wilson, 1886, 38 La.Ann. 209; Brewster v. Hewes, 1904, 113 La. 45, 36 So. 883. The syllabus to Barrow v. Wilson, supra, states the law as follows:

"If possession begins in good faith, the right of pleading the prescription of ten years is not affected by the fact that the possession may subsequently have been in bad faith."

This is the law of this state. See Lawrence v. Young, 1918, 144 La. 1, 80 So. 18; Meraux & Nunez v. Gaidry, 1931, 171 La. 852, 853, 132 So. 401.

This ten-year prescription as pleaded by the Turner interest is well supported by the case of Lewis v. Standard Oil Co., 1923, 154 La. 1048, 98 So. 662; Kinchen v. Redmond, 1924, 156 La. 418, 100 So. 607; Thomann v. Dutel, 1925, 158 La. 1026, 105 So. 52.

Article 3483 of the Louisiana Civil Code describes the "just title" meaning to be:

"To be able to acquire by the species of prescription mentioned in this paragraph, a legal and transferable title of ownership in the possessor is necessary; this is what is called in law a just title."

See Leader Realty Co. v. Taylor, 1920, 147 La. 256, 84 So. 648.

In regard to the nature and kind of possession necessary for this prescription, article 3487 states:

"To enable one to plead the prescription treated of in this paragraph, it is necessary that the possession be distinguished by the following incidents:

"1. That the possessor shall have held the thing in fact and in right, as owner; when, however, it is only necessary to complete a possession already begun, the civil possession shall suffice, provided it has been preceded by the corporal possession.

"2. That the possession shall have been continuous and uninterrupted, peaceable, public and unequivocal; a clandestine possession would give no right to prescribe; but he who possesses by virtue of a title cannot be considered as a clandestine possessor, for his title leads to the supposition that the possession commenced in good faith, and that is sufficient to enable him to plead prescription."

If the title of A. D. Turner was not the paramount title in this case, it appears to us that his purchase of this property in good faith, his immediate entering on the property and surveying same and establishing lines, selling and cutting the timber, leasing for oil and gas, mortgaging the property, and selling rights of way across it, is the only nature and kind of possession that he could exercise over this swamp land.

The difference between this possession and the possession offered by Crichton in the Saucier trial is that in this case Mr. Turner had marked his particular tract of land, positively testified that he had been on it, and produced the man who cut the timber on the very tract of land, together with the other uses that he made of the property. This clearly denotes that the possession was on a particular tract of land. To the contrary, in the Crichton-Saucier case, Mr. Crichton could not give a date nor a tract of land even within a section or a quarter section that he had ever possessed or over which he had ever exercised any possession.

This property in contest belongs to A. D. Turner by virtue of the fact that he has a clear and unequivocal title from the state of Louisiana which outdates the title that the Crichtons and Goodwills have; and also, that his exercise of the use over this property has been such that if he did not have a title he would have acquired one by the prescription of ten years; and, therefore, it is decreed that A. D. Turner is entitled to the sum of money deposited in the registry of the court for this tract of land.

Judgment will be signed accordingly upon presentation.