CAVANAUGH, Judge.
Plaintiff sued the defendant for a partition of North half of Northwest quarter and West half of Northeast quarter, Sec *329 tion 13, Township 3 South, Range 4 West, alleging that he and defendant were co-owners in division and in the portion of one-half interest each and that the property-should he partitioned in kind. Defendant answered the suit, denying plaintiff’s ownership in the land and affirmatively alleged that it owned the whole of the property. It averred that Schwing Lumber & Shingle Company, Ltd., on August 19, 1924, purchased a large tract of land from the West Feliciana Lumber Company, including the land described in plaintiff’s petition; that the land acquired- wa!s open swamp, or wild land and was subject to no other possession than cutting and' removing the timber therefrom; that after the purchase of the land by the Schwing Lumber & Shingle Company, Ltd. it went into possession of said land, had the lines established and cut and removed timber therefrom. That it is the successor of and vendee of Schwing Lumber & Shingle Company, Ltd. and that since its acquisition from the Schwing Lumber & Shingle Company, Ltd. it has had possession of said land, removed timber therefrom, has policed said land to prevent depredation thereon, leased the same for mineral development, paid the taxes, and that having acquired title to said land by a just title and having been in possession thereof for more than ten years it pled ten years ’ prescription acquirendi causa against any claim plaintiff had. Defendant prayed that it be decreed the owner of said land by virtue of its title and alternatively that the ten year plea of prescription be sustained.
After trial, the lower court sustained defendant’s plea of ten years prescription ac-quirendi causa and dismissed plaintiff’s suit.
The record shows that Thomas W. Rayn-ham acquired the land by patent from the State of Louisiana on December 23, 1876. He sold the property to Charles W. Leet and Edwin H. Leet on October- 13, 1883. Edwin H. Leet sold his undivided one-half interest to J. Hereford Percy on November 19, 1902. J. H. Percy sold his undivided one-half interest to Cat Island & Industrial Company, Ltd. on January 23j 1903. Cat Island & Industrial Company, Ltd. sold its undivided one-half interest in the land to Bayou Sara Lumber Company, Ltd. on March 30, 1912 and Bayou Sara Lumber Company, Ltd. conveyed to West Feliciana Lumber Company as per record in Notarial Book 30, page 330, filed for record May 15, 1918. The West Feliciana Lumber Company conveyed to Schwing Lumber & Shingle Company, Ltd. on August 19, 1924, the whole property. The description in the deed reads as follows:
“Also: The West half of the Northeast quarter Section 13, the Southeast quarter of the Northeast quarter of Section 13, the North half of the Northwest quarter of Section 13, the Southeast quarter of the Northeast quarter of Section 13, the West half of the Southwest quarter of Section 13, the East half of the Southeast quarter of Section 13. That portion of said Section 13 hereby described containing 400 acres; * * * all of the lands in this item described being in Township 3 South, of Range 4 West, in said Greenburg Land District, and Parish of West Feliciana,- State of Louisiana.”
The Schwing Lumber & Shingle Company, Inc. acquired all of the outstanding capital stóck of Schwing Lumber & Shingle Company, Ltd. on January 28, 1929, and subsequent to that date exercised all control and possession of the property of the Schwing Lumber & Shingle Company, Ltd., and on November 16, 1938, proceedings were initiated to technically liquidate the Schwing Lumber & Shingle Company, Ltd. and E. N. Taylor, Calvin K. Schwing and E. B. Schwing, Jr. were appointed liquidators of the corporation and said liquidators on December 28, 1938 conveyed' to the defendant the’ 400 acres of land situated in Section 13, Township 3 South, Range 4 West, that Schwing Lumber & Shingle Company, Ltd. had acquired from West Feliciana Lumber Company.
On July 11, 1941, defendant conveyed to Natalbany Lumber Company, Ltd. all cypress, ash, willow-, ¡túpelo gum and cottonwood timber, trees, wood and growth *330 twelve inches and above at the stump at the time of the cutting,, measured twelve inches above the ground and fallen timber and logs of said species no smaller in size and all red gum, sap gum, elm, sycamore, oak of all varieties, locust, hackberry, maple and pecan timber, trees, logs, wood and growth of above species, whether growing, standing or lying upon the following described lands:
“* * * West half Northeast quarter, Southeast quarter Northeast quarter, North half Northwest quarter, West half Southwest quarter, East half Southeast quarter, Section 13, Township 3 South, Range 4 West, (with other lands)”
for a consideration of $11,150.03. According to this timber deed, the timber on the entire acreage described in the deed had been estimated by Lemieux Brothers on September 15, 1929, and by H. M. Spain & Co., January 22, 1938. On September 5, 1941, Natalbany Lumber Company, Ltd. conveyed to King Edward Fuller Company, a partnership composed of G. H. King, J. B. Edwards and Parrish Fuller, the timber on the 360 acres of land which it had acquired from the defendant along with the timber on other lands adjacent, adjoining and neighboring to the land involved in this lawsuit. On February 10, 1947, the partnership of King Edward Fuller Company conveyed to King Lumber Industries, a Mississippi corporation domiciled in Madison County, Mississippi, the timber on the 360 acres of land which the partnership had acquired from the Natalbany Lumber Company along with the timber on other lands described- in that deed. On March 1, 1948, King Lumber Industries conveyed to King Lumber Industries, Inc. the timber rights which King Lumber Industries had acquired from King Edward Fuller Company to the timber on the above described lands.
The plaintiff’s record title is predicated on the tax sale made by the Sheriff of West Feliciana Parish to C. E. Thibodeaux dated July 28, 1917, under an assessment in the name of C. W. Leet, for the unpaid taxes of 1916.. The description in the tax deed reads as follows:
“97.80 acres of swamp land, being the undivided one-half of North half of Northwest quarter, and one-half Northeast quarter, Section 13, Township 3 South, Range 4 West, in the Sixth Ward of the Parish of West Feliciana, State of Louisiana.”
Deed from C. E. Thibodeaux to Leslie Smith dated April 29, 1920, deed from L. G. Smith to G. T. Barrow dated October 7, 1920, deed from G. T. Barrow to C. E. Thibodeaux dated April 25, 1923, deed from L. G. Smith to Charles E. Thibodeaux dated September 11, 1950, deed from Charles E. Thibodeaux to the plaintiff undated but filed for record January 22, 1951; and a correction deed dated October 30, 1952, between the same parties.
We will now discuss the possession exercised by the plaintiff and his authors in title to sustain his ownership of an undivided one-half interest in and to the land by virtue of the tax sale made to his vendor Charles E. Thibodeaux by J. H. Clack, Jr., Sheriff and Ex-Officio Tax Collector of West Feliciana Parish on July 28, 1917. The evidence of Charles E. Thibodeaux shows that the only actual corporeal possession exercised by him on the land was immediately after his acquisition at tax sale when he claims to have gone upon the land on one occasion and within one or two years after he purchased the property at tax sale he cut between 10 or 18 cypress trees off the land for his own use to make shingles. He first testified 10 or 12 trees but later testified that he cut maybe 12 or 15, or -maybe 18.
A stipulation was made in the record that defendant submitted a list of property owned by it to the Tax Assessor of the Parish of West Feliciana commencing with the year 1924 in which was included the property in controversy and that the defendant had paid the taxes annually on said property since that time. It was also stipulated that the taxes on the property had been paid by Thibodeaux commencing *331 with the year 1918 up to the time that the property was sold to the plaintiff, T. H. Martin, except for the years of 1921 and 1922 at which time the property was assessed in the name of G.0T. Barrow. The only other possession exercised by the plaintiff to the property was that after his acquisition he had the property surveyed by a civil engineer, W. B. Smith, in the fall of 1952, for the purpose of determining the location of the lines and whether or not the property could be divided in kind.
The evidence of the actual possession exercised by defendant, plaintiff in the plea of prescription, consists of that of Clement Mayon, Lawrence Pania, C. K. Schwing, Walter Marineaux and J. E. Dillard. The witness Clement Mayon testified that he had been in the logging business for 58 or 60 years for the Schwing Lumber Company and that he got out timber for the Schwing Lumber & Shingle Company in West Feliciana Parish on Cat Island during the year of 1928 and worked there from 1928 to 1932. That to get to the timber situated on Cat Island, which includes the timber on the land in controversy, he went up through Bayou Sara and cut float roads and cut timber in the vicinity south of Black Fork Lake. That he brought a houseboat and had gas boats used in his operations and that he had a crew of 20 to 25 men. That the timber he was cutting was túpelo gum and cypress. During his operations in 1928 he had five Lockwood Ash eight horsepower boats with no mufflers. That the land was pointed out to him by Charlie Kleinpeter and Jake Hor-tenstein. That they were surveyors and civil engineers and had run the lines around the property. That he finished the floating out of the timber cut at that time in May of 1928. That he cut and removed a.' sizable quantity of timber at that time and went back in the same area in 1929 with a crew of 25 to 40 men and that he had houseboats to provide lodging for his crew. That the timber that he cut off of these lands went to the Schwing Lumber & Shingle Company at Plaquemine and that he was cutting the timber for it and that he was paid so much per thousand feet and that at no time did anyone interfere with his operations. He didn’t know what particular section of land he cut timber on except that it was in the area of Black Fork Lake and the lands pointed out to him as belonging to the Schwing Lumber & Shingle Company. He made no attempt to estimate the number of acres he cut. His testimony shows that he cut the choice timber over this land and floated it out for the company. He would not definitely state he cut on Section 13 but the surveyor Hortenstein showed him the lines. The witness Lawrence Pania worked with Mayon in 1928 and towed the timber that was removed in the Black Fork area into Bayou Sara Creek where it was carried to the Schwing Lumber & Shingle Company at Plaquemine. The timber was scaled by Walter Marineaux, Jr. and Eus-tice Marineaux. This witness testified that he had worked for the Schwing Lumber Company all of his life and that he was 57 years old. He operated one of the boats used in dragging the timber. He also testified that the land was low swamp land and that he did not see anything but water and trees and that he brought the timber from Black Fork Lake through the float road to the mouth of. Bayou Sara.
Township maps covering Township 3 South, Range 4 West, and Township 3 South, Range 3 West, showing the lands acquired by the Schwing Lumber & Shingle Company, Ltd. in 1924 were filed in the record. The lands acquired under this deed are colored in green. This map shows Black Fork Lake lying north of Section 12, Township 3 South, Range 4 West, and part of it covers that portion of Section 12 in the northwest corner and Northeast quarter of Northeast quarter of Section 13 and into Sections 7 and 18, Township 3 South, Range 3 West. The outlet of Black Fork Lake to the Mississippi River on the south according to this map is Black Fork Creek which runs into Bayou Sara to the east and southeast. This map* shows several sections of land in Township 3 South, Range 3 West to the southeast of the land in controversy as well as. several sections to the west, all of which *332 was acquired under the same deed, on which • defendant’s title is predicated.
Mr. C. K. Schwing, who was treasurer of the Schwing Lumber & Shingle Company, Ltd. at the time the purchase was made and who had served as Vice-President also of the company and who, at the time of the trial, was president of the company, prepared the map, the green shaded area which shows the land covered by the defendant’s deed. He testified that Mr. Mayon cut and logged from this land covered by the deed and in 1928 cut 178,248 feet of timber and during 1929, according to the records of the defendant, he cut and removed 314,131 feet. That the only adverse claim since defendant’s acquisition was that made by the plaintiff, Mr. Martin, or by Mr. Thibodeaux, and that the first time he heard about any claim being made was about a year and a half or two years before the suit was filed when the defendant leased the land to the Sinclair Oil Corporation, and representatives of that company told him that Mr. Thibodeaux or Mr. Martin was claiming the land and that the property at that time had been leased to the Sinclair Oil and Gas Company. He stated that according to the records of the company timber was cut from this tract by Mayon in 1928 and that LaCaze worked the timber between 1934 and 1936; and that Sidney Kleinpeter worked on the land-in 1930 and that the non-float timber 'was sold on agreement to Natalbany Lumber Company and on September 1, 1938, the float timber was sold to Natálbany Lumber Company on agreement. Charlie Klein-peter and Hortenstein are dead and that they looked after the timber and logging operations for his company and that his company owned on Cat Island approximately 10,021 acres and that he does not know particularly from what section the timber was cut but that the contract with Mr. Mayon covered Section 13.
Walter Marineaux, who had formerly been employed by the Schwing Lumber & Shingle Company, Ltd., scaled the timber cut by Mayon in 1928 and 1929 at the mouth of Bayou Sara Creek and that he assisted Mr. Hortenstein in surveying the different lands owned by Schwing Lumber Company in 1928 and 1929 and that .they blazed trees and ran the lines around its lands on Cat Island. At the present time this witness is president of the Iberville Parish School Board.
J. E. Dillard, who at the time of the trial was logging superintendent for King Lumber Industries, had worked for the Natalbany Lumber Company and logged and cut timber from the Schwing Lumber Company holdings on Cat Island in 1938 and 1939. He testified that the Natalbany Lumber Company built a tram road in there in 1937 and that the timber that he cut was brought out over the railroad and that there is still evidence of where the railroad was located. Evidence of the old ties and right-of-way could still be found on the ground. He marked with an ink mark the location' of this ’ tram road on the map showing the general direction traversed by the tram road. He stated that this tram road went all the way up to Black Fork Lake and that the Natalbany Lumber Company and the King Industries removed a great deal of timber and that in his logging operations he used trucks and tractors. He particularly stated that during his logging operations in 1938 and 1939 timber in Section 13 was cut because the lines had been run and he knew that is where he cut the timber and that he constructed log roads going to this Section 13 to connéct up with the branch of that tram road. After he quit logging in there he was followed by C. O. Blackburn who conducted the logging operations for the King Company. This witness further stated that when he first went in there to log there was old pecan,'gum and timber like that that had not been cut but there was signs of túpelo and sypress which had been cut because he saw the stumps. Most of the virgin timber had been cut. This witness went back on the land where he had cut the timber after -W. B. Smith had surveyed the land for the plaintiff in the fall of 1952 and that he cut timber from Section 13 because it was within the lines of the Smith survey.
*333 It was stipulated that the witness C. O. Blackburn, who followed Dillard as logging superintendent for the King Industries in 1946, conducted logging operations on the land of the Schwing Lumber & Shingle Company, Inc. in the vicinity of Section 13 but the stipulation was made without any admission on the part of plaintiff that logging operations were actually conducted on Section 13.
We have analyzed the testimony at length in this case because the opinion of the trial judge contained no analysis of the evidence but only his conclusion that the evidence showed that the defendant had a good prescriptive title because of its actual possession of the land.
The plaintiff has seriously argued in brief and oral argument that since there is no definite proof that the Schwing Lumber &! Shingle Company, Ltd., or its successor, Schwing Lumber & Shingle Company, Inc. actually cut timber from the particular land or lands in controversy or any timber in Section 13, Township 3 South, Range 4 West, that the plea of prescription of ten years- acquirendi causa •can not be maintained. Plaintiff also argues that since his tax sale was more than 13 years old when the suit was filed and was on the public records that it was beyond attack. The only legal question. presented in this case is whether or not the defendant at the time this suit was filed had acquired a. valid prescriptive title to the property. The plaintiff contends that the defendant would have had to exercise actual possession on the particular land in controversy although it acquired more than 10,000 acres in its deed of acquisition some -of which was contiguous to the land involved in this suit. We believe that the jurisprudence is against the plaintiff’s position because if his argument were followed .actual physical possession would have to be exercised over every acre of land described in the deed. Under the ten year prescription it is our appreciation of the law that when an owner possesses under a deed translative of title, he possesses to •the full extent of the property described in his deed, and if he corporeally possesses any part of the .property described in his deed he corporeally possesses all of that contiguous to that which he actually possesses. Thé point is made that the defendant had a title examination of the property at the time of its acquisition and it knew of the outstanding interest evidenced by the tax sale to Charles E. Thibo-deaux because the tax sale was of record at the time of defendant’s acquisition. That plaintiff’s authors in title having exercised possession to the extent of cutting and removing one or two dozen cypress trees from the property in 1918 or 1919, followed by his payment of taxes continuously and regularly, protected his actual possession of the land commenced by the cutting of the cypress trees. When defendant commenced its timber operations on the lands described in the deed from the West Feliciana Lumber Company to Schwing Lumber & Shingle Company, Ltd. in 1928 and continued said operations intermittently over the lands when weather conditions would permit from time to time and then the continuous operations by Natalbany Lumber Company under its acquisition of the timber and that of the partnership of King Edward Fuller and King Industries for more than a period of ten years prior to the filing of this suit ousted and ¡supplanted, any actual possession exercised by Charles E. Thibodeaux by cutting the few cypress trees back,in 1918 and 1919 under the tax sale to him. . The possession exercised . by the Natalbany Lumber Company was by virtue of the timber contract and sale between it- and the defendant and the operations conducted by its vendee King Lumber Industries all inured to the benefit of defendant to support its plea of ten years prescription ac-quirendi causa. The articles of the LSA-Civil Code applicable to the ten years prescription acquirendi causa are:
“3478. He who acquires an immovable in good faith arid by just title prescribes for it in ten years. * * *
“3479. To acquire the ownership of immovables by the * * * prescription which forms the subject of the *334 present paragraph, four conditions must concur:
“1. Good faith on the part of the possessor.
“2. A title which shall be legal, and sufficient to transfer the property.
“3. Possession during the time required by law, which possession must be accompanied by the incidents hereafter required.
“4. And finally an object which may be acquired by prescription.
* * * * * *
“3483. To be able to acquire by the species of prescription mentioned in this paragraph, a legal and transferable title of ownership in the possessor is necessary; this is what is called in law a just title.
* * * * * ' *
“3487. To enable one to plead the prescription treated of in this paragraph, it is necessary that the possession be distinguished by the following incidents:
“1. That the possessor shall have held the thing in fact and in right, as owner; when, however, it is only necessary to complete a possession already begun, the civil possession shall suffice, provided it has been preceded by the corporal possession.
“2. That the possession shall have been continuous and uninterrupted, peaceable, public and unequivocal; a clandestine possession would give no right to prescribe; but he who possesses by virtue of a title can not be considered as a clandestine possessor, for his title leads to the supposition that the possession commenced in good faith, and that is sufficient to enable him to plead prescription.
******
“3498. When a person has a title and possession conformably to it, he is presumed to possess according to the title and to the full extent of its limits.
******
“3437. It is not necessary, however, that a person wishing to take possession of an estate should pass over every part of it; it is sufficient if he enters on and occupies a part of the land, provided it be with the intention of possessing all that is included within the boundaries.”
These articles of the Code have been construed to mean that an owner who purchases under a deed and goes into actual possession of a part with intention of possession to the full extent of his title acquires a perfect title to the whole after the expiration of ten years unless his possession has been interrupted.
“The plain and reasonable meaning of these articles would seem to be that, where one purchases a parcel of land from another who purports to be the owner thereof, and the vendee in good faith and with the bona fide belief that he has acquired the whole, goes into actual possession of a part with intention of possession to the full extent of his title, he thereby acquires a perfect title to the whole after the expiration of 10 years, unless that possession has been interrupted in the meantime by the adverse possession of another, or some other legal claim or proceeding made or instituted within that period. To say that, because some one who never had any possession with a dormant claim to a portion of the property may still assert the same after that time, merely because the party relying upon prescription did not actually occupy that particular area, is to destroy the very purpose of security which the above-quoted provisions were intended to afford, and to require of one with title, at least against the claims of such third persons, the same species of possession — foot by foot — as is provided under the 30 years’ prescription of the Code without title, *335 when the very letter of the Code is to the contrary. Such a construction would render it impossible for one examining a title to say that an owner who had possessed under his title for ten years might rest secure; but would still require a test of title to every portion, however small, embraced therein, if it happened to fall without the area actually occupied. See New Orleans Terminal Co. v. Luckner, 147 La. 967, 86 So. 411; Leader Realty Co. v. Taylor, 147 La. 256, 84 So. 648; Eiver’s Heirs, v. Rankin’s Heirs, 150 La. 4, 90 So. 419; and authorities cited in these cases.
“See, also Gregg v. Tesson, 1 Black 150, 66 U.S. 150, 17 L.Ed. 74; Dredge v. Forsyth, 2 Black [563] 571, 17 L.Ed. [253] 255.” Lewis v. Standard Oil Co. of Louisiana, 154 La. 1048, 1050, 98 So. 662, 663.
Plaintiff argues that when the Schwing Lumber & Shingle Company, Ltd. acquired the title in 1924 it had the title examined by attorneys and the title examination showed that an undivided one-half interest was vested in Thibodeaux because he had a tax title to an undivided one-half interest in the property at that time according to the public records. He reasons that by virtue of this title examination defendant’s predecessor in title was not in good faith and can not rely upon the prescription of ten years. The evidence of Mr. Schwing, who was treasurer of the company at the time the purchase was made, is that he did not remember whether they got a written title opinion from attorneys or not but he definitely states that he did not know of any claim anybody was making to the property until a short time before this lawsuit was brought when his corporation leased the land to the Sinclair Oil Corporation.
A person is termed a possessor in good faith when he “has just reason to believe himself the master of the thing which he possesses, although he may not be in fact; as happens to him who buys a thing which he supposes to belong to the person selling it to him, but which, in fact, belongs to another.” LSA-Civil Code, Article 3451.
The possessor in bad faith is “he who possesses as master, but who assumes this quality, when he well knows that he has no title to the thing, or that his title is vicious and defective.” LSA-Civil Code, Article 3452.
“Good faith is always presumed in matters of prescription; and he who alleges bad faith in the possessor, must prove it.” LSA-Civil Code, Article 3481. The evidence adduced on the trial of the case by the plaintiff through his cross examination of the President of defendant corporation is not sufficient to overcome the presumption of good faith of the defendant’s predecessor in title since it acquired the' property by warranty deed. The fact that the tax title’ was of record would not prevent the defendant from invoking the plea of prescription of ten years acquirendi causa; and it is not to be charged with bad faith because an examination of the records if one had been made would have disclosed a defect in the title of West Feliciana Lumber Company. See Smith v. Southern Kraft Corp., 202 La. 1019, 13 So.2d 335, and authorities therein cited.
The timber operations carried on by the defendant commencing in 1928 and continuing for several years following until it sold the timber to Natalbany Lumber Company was over the entire tract. The body of land acquired by the defendant’s author in title consisting of more than 10,000 acres of land and part of it is situated in Township 3 South, Range 4 .West, and part in Township 3 South, Range 3 West. It is not all contiguous but all of that lying south of Black Fork Lake and situated in Sections 12 and 13, Township 3 South, Range 4 West, is contiguous with that situated in Sections 18, 75, 7, 19, 20, 39 and 41 of Township 3 South, Range 3 West. If the defendant in 1928 carried on its logging operation on any of the above referred to sections and continued them in 1929 and also in 1934 and timber operations were conducted by Natalbany *336 Lumber Company and King Industries subsequent to that time on the lands in controversy or on any of the contiguous lands, then that actual possession inured to the benefit of the defendant in support of its plea of prescription of ten years. Of course, we know-that where separate tracts are conveyed by an owner in one deed the rule that possession of the part under title to the whole is possession of the whole is without application to that part not actually possessed. But the sections we have referred to have more than just a common point of contact at certain section corners because the north boundary of the land in controversy adjoins and abuts the south boundary of Section 12, Township 3 South, Range 4 West, and defendant at the time of its operation under its conveyance in addition to the land in controversy owned in Section 13, Township 3 South, Range 4 West, according to the map and deed, the entire East quarter of Section 13, Township 3 South, Range 4 West, "except the Northeast quarter of Northeast quarter, and according to the definition laid down by the court in Lee v. Giauque, 154 La. 491, 97 So. 669, the lands in Sections 12 and 13, Township 3 South, Range 4 West, except the West half of the Southwest quarter, along with that in Sections 18, 75, 19, 20, 39 and 41, Township 3 South, Range 3 West, are contiguous and defendant’s actual physical possession of any part of these lands under its title was possession of the whole of the lands in these particular sections.
Plaintiff takes the position that there had to be actual possession by defendant of the land in controversy but if we appreciate the law its possession of a part of a contiguous tract with title to the whole is possession of the whole. Gulf Refining Co. of Louisiana v. Jeems Bayou Hunting & Fishing Club, 129 La. 1021, 57 So. 322; Dupuy v. Joly, 197 La. 19, 200 So. 806; Kees v. Louisiana Central Lumber. Co., 183 La. 111, 162 So. 817; Smith v. Southern Kraft Corp., supra. In addition to the actual possession of the lands exercised by the defendant, the agents and employees of Natalbany Lumber Company and King Industries cut timber on the particular land in controversy. This is evident by the testimony of Dillard, wood superintendent of Natalbany Lumber Company in 1938 and 1939. The acts of Nat-albany Lumber Company and King Industries were certainly acts of corporeal possession, inuring to the benefit of the defendant to sustain its prescriptive title. A person may acquire the possession of property not only by himself but also through others who receive the possession in his name and under his authority. LSA-Civil Code, art. 3438. Certainly when Natalbany Lumber Company and King Industries went upon the land in controversy and cut the timber thereon, constructed a tram road on contiguous property, these acts of possession were performed by them under the timber deed from defendant. Their possession was notice to the world that defendant was claiming the property. W. W. Duson, Inc. v. Hunsicker, 9 La.App. 657, 120 So. 86; Neilson v. Haas, La.App., 199 So. 202.
For the reasons assigned, the judgment of the court below sustaining defendant’s plea of prescription of ten years acquirendi causa is affirmed.