PONDER,- Justice.
 

 The defendants have appealed from a judgment of the lower court, in jactitation proceedings, ordering them to disclaim title to lands alleged to be owned by the plaintiff or to assent their title to the property in a petitory action within sixty days, in default of which the defendants would be forever barred from asserting title to the lands and their title erased from the public records.
 

 Counsel for the defendants contends that the plaintiff has failed to establish sufficient possession to maintain an action in jactitation. He states that the only issue in the controversy is the plaintiff’s possession because the defendants have denied that plaintiff has possession of the property and refused to convert the suit into a petitory action by not asserting their title to the property.
 

 P. C. Jacobs owned a large tract of land in Tensas Parish, containing what is known as the Luckett Plantation and what is known as t'he Winston Tract. The plaintiff acquired the Winston Tract, containing ISO acres of land, by tax deed, dated September 3, 1927, conveying Jacobs’ interest in the land to him and being described, as follows: “Lot No. 7 and part of Lot No. 6 lying East of Buckner’s Bayou in Section No. S3; also all that part of SEJ4 of NW% °f Section S3 East of Buckner’s Bayou, T. 9 N., R. 10 E.”
 

 The Union Central Life Insurance Company acquired the Luckett Plantation, containing 526 acres of land, by sheriff’s deed, dated November 26, 1929, in a foreclosure' proceeding against Jacobs. The Insurance Company conveyed' the Luckett Plantation to J. W. Brown and A. C. Ferrington by deed, dated October 25, 1934, described as follows, viz.: “The NEJ4 of said Section,, except that part of Lot 2 which lies West of Buckner’s Bayou in Section S3; all the
 
 *5
 
 fractional Section 52 and the South half of the fractional Section 46, except the right-of-way of the Memphis, Helena & Louisiana Railway Company, all being in T. 9 N., R. 10 E. containing 526 acres more or less, known as the Luclcett Plantation.” Ferrington sold his. undivided one-half interest in the Luckebt Plantation to Brown by deed dated August 10, 1936. This sale was confirmed by deed, dated December 8, 1939, reciting, that it was the intention of ithe vendor to convey his entire interest in the property to Brown. In the confirmation deed the description was changed so as to call for Lot No. 2, Seotion 53 lying West of Buckner’s Bayou.
 

 On October 13, 1945, Brown and Ferrington executed a deed to Charles C. Collier purporting to convey the following described property: “The South Half of Lot 3, Section 53, that part of Lot 7, Section 53, lying East of Buckner’s Bayou; and a strip of land South of Sections 46 and 52, all lying in T. 9 N., R. 10 E.” The portion of the land lying in Sections 46 and 52 is more fully described in the deed, which we have omitted because it is not pertinent in this case; it is the property involved in the suit of Rhodes et al. v. Collier, 215 La. 754, 41 So.2d 669, in which an opinion was handed down by us on May 31, 1949. It is stated in this deed that the described property is a part of the Jacobs’ property and part of the same property bought by Ferrington and Brown.
 

 . It is to be noted that Ferrington and Brown .attemped to convey to Collier property to which they had no title. In this same deed they also attemped to convey the Rhodes’ property referred to above. Counsel for the defendants, in an answer to questions propounded by members of this Count during his argument, admitted that the deed was executed to avoid a boundary dispute and that ithe real consideration supporting the deed was ito be an interest in the oil rights.
 

 The plaintiff’s author in title had possession of the property previous ito the tax sale. The possession was evidenced by farming operations on Lot 3 and the cutting of timber on Loits 6 and 8. The plaintiff moved a cabin on the property in 1939 and farming operations were conducted thereon through his-tenants from 1940 to 1942. The land has been assessed to ithe plaintiff and he has paid the taxes on the property since he acquired it. The plaintiff has executed mineral leases covering portions of this land and received rentals from the lessees. One of ithe oil companies graveled a road through a portion of this land and made a location for an oil well under a lease .from the plaintiff.
 

 The possession required in an action in jactitation is similar to' that required in a possessory action. The plaintiff has the right to bring an action in jactitation if he has not been deprived of •his possession even though the defendants may have disturbed his possession. Weth
 
 *7
 
 erbee v. Railroad Lands Company, 153 La. 1059, 97 So. 40. The possession of a portion of ithe land extends to the limits or boundaries set out in the title deed and this actual possession is preserved and maintained as though the property had always been physically possessed by the plaintiff. Articles 3437, 3442 and 3443, Revised Civil Code; Ellis v. Prevost, 19 La. 251; Duffourc v. Constantin, 189 La. 826, 181 So. 183; Lee v. Harris, 209 La. 730, 25 So.2d 448.
 

 In the case of International Paper Company v. Louisiana Central Company et al., 202 La. 621, 12 So.2d 659, we stated thait a jactitation suit can be maintained only by one who is in actual possession as owner. We reiterated this statement in Lenard v. Shell Oil Company, 211 La. 265, 29 So.2d 844. There are two kinds of possessions set forth in our Civil Code, natural and civil. Article 3427. This Court has on numerous occasions interpreted the term “actual possession” found in Article 49 of the Code of Practice relative to the possessory action and concluded that a civil possession preceded by an actual corporeal detention of the property is sufficient because the actual possession previously acquired is preserved, maintained and continues in the same manner and effect as if the property had been always possessed. Duffourc v. Constantin, supra. The term “actual possession” has been so construed in actions in jactitation. Wetherbee v. Railroad Lands Company, supra.
 

 The plaintiff had sufficient possession to maintain the action unless he has been deprived of it by an adverse possession of the defendants. The record in the Rhodes case was introduced in this case. In ithe Rhodes case, a possessory action, we reviewed the evidence touching the acts relied on 'by the defendants to establish their possession of a part of the property purported to be transferred in this same deed. The additional evidence offered in this case is of a similar character. We stated thei'ein that the defendant could not defeat the possession of the record owner who has corporeal possession of a part of the property other than by an adverse possession by inclosures. We were of the opinion that the 'evidence relied on by the defendants to prove possession in them revealed mere trespasses. The evidence adduced by the defendants to show their possession of the property is very unsatisfactory. Two of the defendants were so evasive in their testimony that the lower court commented on it in the Rhodes case. The defendants constructed a fence on the south side of the property, but it does not appear that the property was ever entirely inclosed. The defendants’ cattle grazed on the land and it appears that because the ■land was not entirely closed cattle owned by other parties also grazed on it. The fact that the defendants attempted to manufacture a deed covering the plaintiff’s property when they ¡had no color of title and the evasiveness of their testimony disparages the meager evidence offered by the
 
 *9
 
 defendants 'to establish possession by trespasses under a manufactured title. To conclude otherwise would be contrary to law and equity.
 

 The plaintiff has asked for damages in the amount of $4,500.00. The lower court did no't entertain the claim for damages and stated that this question should be determined in subsequent proceedings. We cannot exercise original jurisdiction in this matter. It is no't necessary to remand the case because the plaintiff is amply protected and this question can be more accurately determined when the litigation is 'terminated.
 

 For the reasons assigned, the judgment is affirmed at appellants’ cost.
 

 O’NIELL, C. J., takes no part.