256 So.2d 710 (1971)
Ambrose THERIOT et al.
v.
LA-TERRE COMPANY, Inc.
No. 8604.
Court of Appeal of Louisiana, First Circuit.
December 20, 1971.
Rehearing Denied January 31, 1972.
Writ Refused March 8, 1972.
*711 Lawrence Benson, Jr., and J. B. Miller, of Milling, Saal, Benson, Woodward & Hillyer, New Orleans, Donald L. Peltier, of Peltier & Peltier, Thibodaux, for appellants.
Karl E. Lewis, Jr., of Duval, Arceneaux & Lewis, Houma, for appellee.
Before LANDRY, BLANCHE and TUCKER, JJ.
TUCKER, Judge.
This case was instituted initially as a possessory action by the alleged heirs of Levy Theriot as follows:
1. Ambrose Theriot
2. John Theriot
3. Medric Theriot
4. Theogene Theriot
5. Mrs. Adel Theriot Champagne
6. Mrs. Sarahline Theriot Champagne
7. Levy Theriot, Jr.
8. Mrs. Mary Ann Theriot
9. Isaac Theriot
10. Mrs. Rose Theriot Champagne
11. Mrs. Corrine Theriot Naquin
12. Mrs. Irene Theriot Dupre
13. Mrs. Rita Theriot Bergeron
14. Albert J. Mire
15. Alfred J. Duplantis
16. Wilson Duplantis, Jr.
17. Wilsey J. Duplantis
18. Murphy Duplantis
19. Mrs. Roseline Duplantis Orgeron
20. Mrs. Gladys Duplantis Picou
21. Mrs. Edna Duplantis Foret
22. Mrs. Laurella Duplantis LeCompte
23. Easton Bergeron
24. Harris Bergeron
25. Mrs. Lillia Bergeron
26. Clifton Porche
27. Mrs. Barbara Baker
28. Earl Anthony Porche, Jr.
Marie Theriot, through her curator Isaac Theriot, and two minors, Patricia Ann Ginnis and Darrell Ginnis, through an attorney ad hoc, Jasper K. Wright, Jr., were joined in this case as nominal parties defendant under Code of Civil Procedure Art. 644. By a stipulation set forth in Exhibit P-21 and by an answer filed by the attorney ad hoc for the aforementioned minors it was established that the interest of these nominal parties defendant is coincident with that of the plaintiffs; therefore they will be included hereafter in any references made to "plaintiffs."
Following institution of this action one of the plaintiffs, Earl Anthony Porche, Sr., died and his children, Mrs. Barbara Baker and Earl Anthony Porche, Jr., were substituted in his place, and their names are included among the plaintiffs listed above and hereinafter referred to as "Theriots."
Plaintiffs allege that their ownership of eight of the eleven tracts of land originally in dispute in this action derives from an act of sale describing these particular tracts made by Jean M. Durand to Levy *712 Theriot, dated January 11, 1897, recorded in C.O.B. 22 folio 478, under Entry No. 46/8806 of the Conveyance Records of Terrebonne Parish, Louisiana. These lands consist of more than 300 acres of marsh and high land in Sections 26 and 27, Township 19 South, Range 16 East, Terrebonne Parish, Louisiana. Plaintiffs claim no recorded ownership of the three tracts of land still in dispute on appeal, but allege more than thirty years possession of these lands adjacent to the ones over which they have recorded ownership no longer disputed, prior to the time that they allege that they were disturbed in their ownership by defendant on March 22, 1965. Plaintiffs originally brought suit on March 9, 1966, less than a year after the various acts of disturbance of possession which they describe in their petition.
Defendant is La-Terre Company, Inc., a foreign corporation authorized to do and doing business in the State of Louisiana, admittedly the record owner of the three tracts of land still in dispute on appeal, but charged by the plaintiffs with disturbing them in the possession of "their" lands.
Originally eleven tracts were involved in dispute. The lower court recognized plaintiffs' right to possession of Tracts I, II, III, IV, V, VI, VII, VIII, and IX, as designated on a map attached hereto and made a part of this opinion. The lower court also rejected plaintiffs' demands and recognized defendant's possession of Tracts X and XI, as designated on the same map. From this judgment defendant La-Terre appealed, asking reversal and recognition of its possession of its property in Section 26, Township 19 South, Range 16 East, Terrebonne Parish, designated as Tracts I, II, and III by the lower court and more particularly described below as:
I. A certain tract of land shown and depicted as Tract 1 on said plat made by Edward C. McGee, Registered Surveyor, under date of February 9, 1966, on file and of record in these proceedings as Exhibit Defendant 1 and made a part hereof by reference, commencing at a point which is the Southwest corner of the Northeast ¼ of the Northwest ¼ of Section 26, T 19 S, R 16 E, said point being a 6" × 6" concrete monument. Thence North 89° 15' 00" East to a point which is at a distance of 1,152.00' from Bayou Dularge, thence in a Northeasterly direction to a point in a line between Eustis Champagne and the Estate of Levy Theriot, said point being 1,152.00' from Bayou Dularge, thence South 89° 15' 00" West to a point in the West line of the Northeast ¼ of the Northwest ¼ of Section 26, thence South 0° 45' 00" East a distance of 384.00 TO THE POINT OF BEGINNING.
II. A certain tract of land shown and depicted as Tract 2 on said plat made by Edward C. McGee, Registered Surveyor, under date of February 9, 1966, on file and of record in these proceedings as Exhibit Defendant 1 made a part hereof by reference, commencing at a point which is the Northwest corner of the Northeast ¼ of the Northwest ¼ of Section 26, T 19 S, R 16 E, said point being a 6" × 6" concrete monument. Thence South 0° 45' 00" East a distance of 171.60' to the POINT OF BEGINNING PROPER, thence South 0° 45' 00" East a distance of 777.22' to a point, thence North 89° 15' 00" East a distance of 1,320.00' to a point, thence North 0° 45' 00" West a distance of 777.22' to a point, thence South 89° 15' 00" West a distance of 1,320.00' TO THE POINT OF BEGINNING PROPER.
III. A certain tract of land, being the Northwest ½ of the Southwest ¼ of the Northwest ¼ of Section 26, T 19 S. R 16 E. and being a portion of that certain tract depicted as Tract 3 on a plat made by Edward C. McGee, Registered Surveyor, under date of February 9, 1966, on file and of record in these proceedings as Exhibit *713 Defendant 1 and made a part hereof by reference, said tract being the triangular shaped portion of said Tract 3 lying to the Northwest of a line drawn from the Southwest corner of said quarter quarter section to the Northwest corner of said quarter quarter section; said triangular portion being bounded on the North by the Northwest ¼ of the Northwest ¼ of Section 26, T 19 S. R 16 E. on the West by the Southeast ¼ of the Northeast ¼ of Section 27, T 19 S. R 16 E. and on the Southeast by the Southeast ¼ of the Southwest ¼ of the Northwest ¼ of Section 26, T 19 S. R 16 E.
In their original petition plaintiffs allege that they "possess as co-owners." (Tr. 9) In paragraphs 4 and 5 of their original petition plaintiffs allege thirty years' possession, describing the acts of possession, all as required under Civil Code Arts. 3499-3503 to prove thirty years' prescription acquirendi when the possessor does not have title to ownership. (Tr. 12) In their prayer the plaintiffs ask alternatively that defendant be ordered to bring a petitory action within a delay to be fixed by the court not to exceed sixty days after the judgment therein becomes executory.
We are concerned here with L.S.A.:C.C.P. Arts. 3655-3661 providing for the possessory action, and particularly with the meaning and interpretation accorded C.C.P. Art. 3658 by the jurisprudence of this state, which Article is quoted as follows:
"To maintain the possessory action the possessor must allege and prove that:
(1) He had possession of the immovable property or real right at the time the disturbance occurred;
(2) He and his ancestors in title had such possession quietly and without interruption for more than a year immediately prior to the disturbance, unless evicted by force or fraud;
(3) The disturbance was in fact or in law, as defined in Article 3659; and
(4) The possessory action was instituted within a year of the disturbance."
In order to be successful in a possessory action the plaintiff must prove the same type of possession which is required under LSA:C.C. Arts. 3499-3505 in order to establish ownership of an immovable by thirty years' prescription.
In the landmark case of Hill v. Richey, 221 La. 402, 59 So.2d 434 (1952) the court defined the type of proof which a plaintiff must offer in order to establish the requisite possession under the possessory action. It was stated that what constitutes possession of land varies in accordance with the facts of each case, and a decision in a particular case depends upon its own facts; among other criteria to be considered are the character and topography of the terrain, and where ownership is claimed by possession, without proof of title, the claimant must show adverse possession by enclosures. In other words there must be some markers or boundaries, either artificial or natural, evincing an intention on the claimant's part of the extent and area of land over which he asserts his possession. The term "enclosures" is not limited to fences and walls, but such marks or bounds must be visible and sufficient to denote the location, area and extent of the land over which possession is alleged.
The Theriots have failed completely to show any bounds whatsoever except those of La-Terre. There is meagre evidence of some pickets or posts, a fence which extended into La-Terre property, (Tr. 321) but absolutely nothing to establish exactly where these pickets or posts were, when they were erected, whether or not they were maintained, their visibility, what they enclosed, or any other indicia of possession, which are required evidentiary items under Hill v. Richey, supra. In Tract III there is a high, wooded ridge, but the Theriots do not claim this as a natural *714 boundary, and the lower court judge drew a line diagonally across it from corner to corner, across open marshland and called this a natural boundary. Although recognizing the validity of natural boundaries in possessory and petitory actions, this court cannot find that the plaintiff-appellees espoused any natural phenomena which they regarded as enclosures for the lands that they presumed to possess.
Although plaintiff-appellees alleged certain acts of trapping on La-Terre property over the years, they do not establish with certitude where the trapping operations were located nor do they establish any acts of possession, such as the granting of trapping leases on the La-Terre lands. Note that one of the Theriot trapping leases shows the property leased to be bounded on the West by property of La-Terre Company "the NE¼ of NW¼ of Sec. 26" (P-14). Any mineral leases which the Theriots granted were on lands of which they were the record owners (Exhibits D-80D-89). They did not show any mineral leases granted by them on Tracts I, II, or III.
The Theriots' acts of farming approximately 2 acres of the 20 acres contained in Tract III, in the extreme northwestern corner of this tract, can hardly be urged as such an act as would constitute possession of the NW½ of the SW¼ of NW¼ of Sec. 26, as recognized by the lower court, in view of the fact that it had been abandoned for at least ten years before the institution of this suit (Tr. 328). The actual dates of this farming were never established and cannot be said to constitute the required one year's possession of Tract III, even if natural boundaries for the Theriots' possession could be recognized. Some testimony suggests that the farming possession, though abandoned by appellees, was buttressed and supported by trapping and hunting, but the evidence is insufficient to establish where or when this occurred.
Since defendant-appellant possesses its lands under a deed translative of title any acts of possession of part of its land are considered constructive possession of the whole. Marks v. Collier, 216 La. 1, 43 So.2d 16 (1949). In 1957-58 La-Terre had its lands surveyed by Marshall Vignes who had to use a "marsh buggy" in the process. He set concrete corner monuments and "no trespassing" signs every 330 feet along La-Terre's boundaries, with double signs at the corners. These signs stood six or seven feet above the marsh. (Tr. 273-279) The aerial photographs taken by Davis in 1959 (Exhibit D-54) clearly show the lines which Mr. Vignes cut around the perimeter of La-Terre's lands, and also the marsh buggy tracks. (Tr. 284) These markers and bounds were seen subsequently by Harold Terracina, a surveyor, when he later made a survey for plaintiffs (Tr. 26) and by the Ray Geophysical party in 1964 (Tr. 259). Following the survey (map made on basis of survey D-52) and posting, La-Terre dug ditches 6 feet wide and 3 to 4 feet deep, 15 feet inside of its own western boundary and along the southern portion of the SW¼ of the NW¼ of Section 26 (Tr. 280-282), which ditches were shown clearly by the aforesaid Davis aerial photograph (Exhibit D-54).
In addition La-Terre has exercised its ownership and possession by granting geophysical permits (Exhibits D-39 and D-40) and mineral leases (Exhibits D-29D-35) covering the lands under dispute, and work has been done on the ground pursuant to these leases and permits. Several seismic surveys, requiring marsh buggies and the detonation of explosives (Tr. 235-236, 241, 242) have been conducted under these agreements, the locations of these surveys being shown in Exhibits D-41 which are maps prepared on the basis of field notes made by the surveyors on the seismic parties (Tr. 203-210). These seismic crews worked on the La-Terre lands in dispute in 1950 and 1952 (D-45).
La-Terre has possessed the lands which it owns through trapping leases, also (Exhibits D-18, D-20, D-22, D-23, D-24, D-26, D-27, D-59, D-65, D-73, D-76 and D-90 *715 covering a period of time from 1925 to date. (See also Tr. 358-359, 375-378).
La-Terre has always paid taxes on the disputed property by the specific descriptions of same (Exhibit P-16), as reflected by the tax receipts in the record. The Theriot tax receipts did not specifically describe the property on which they were paying taxes (Exhibit D-57), and particularly none of the Theriot tax receipts listed descriptions which could be identified reasonably as the property in question. Furthermore plaintiff-appellees have not shown any intention to possess within any certain boundaries Tracts I, II, and III, required by LSA:C.C. 3503, as interpreted by the jurisprudence in Leader Realty Co. v. Taylor, 147 La. 256, 84 So. 648, 651 (1920) and Continental Land & Fur Co. v. Lacoste, 192 La. 561, 188 So. 700 (1939).
The boundaries and markers asserted by the Theriots as identifying their intention to possess the property encompassed in Tracts I, II and III are nebulous and inconclusive. There was an iron borne or bar in the Cart Road some 449 feet west of the northwest corner of the NE¼ of NW¼ of Section 26, and reference was made to another such marker near the remains of an old willow tree on the north boundary of Tract II. Both of these iron bars were either flush with or submerged under the ground. Neither of these markers lend any substantial assistance in denoting the intention of the Theriots to possess Tracts I and II. The lower court, in view of the Theriots' cultivation covering a triangular parcel of land comprising approximately two acres in the Northwest corner of Tract III (SW¼ of NW¼), determined that the Theriots had established possession of the relatively high land in this quarter-quarter section, and the trial judge struck a line diagonally from the northeast corner to the southwest corner of Tract III, holding that the Theriots were entitled to the undisturbed possession of the approximately twenty acres to the northwest of this diagonal line. The trial court found that the plaintiffs had not established possession of the marsh land to the southeast of this diagonal line. Seemingly, the trial judge found the diagonal line to be a natural boundary between the two estates. The fallacy of this constructed line is readily discernible by reference to the testimony and the map of the survey prepared by Edward C. McGee, Jr. (Exhibit D-1), which reflects that the marsh commences much closer to the Northwest corner of Tract III than does the diagonal line. Though the record is devoid of any evidence showing that the woodline should be treated as an enclosure or boundary between the high lands allegedly possessed by the Theriots and the marsh found to be owned by La-Terre, the diagonal line constructed by the trial judge is considerably southeast therefrom, and does not follow the woodline.
With reference to the small portion in the northwest corner of Tract III, proved to have been cultivated by the Theriots, the testimony of Earl Peters, forestry expert, shows that the age of the sweet gum trees growing in the rows clearly shows that this area had not been farmed since approximately 1945. While LSA:C.C.P. Art. 3660 provides that once corporeal possession has been established, civil or constructive possession will suffice to maintain possession, under the provisions of LSA:C.C. Art. 3444 a failure to exercise actual possession for ten years negates the right to have a possessory action maintained. A possessor without title can maintain a possessory action only if he can prove actual possession within ten years immediately preceding the alleged disturbance. The old cultivated rows, covered with trees and undergrowth, were not such vestiges as would challenge the attention and illustrate an intention to possess. See Sattler v. Pellichino, 71 So.2d 689 (La.App., 1st Cir. 1954).
In summary, other than intermittent hunting and trapping, the persons, times and areas involved in such activities being in substantial doubt, the plaintiffs have failed to sustain their burden of proving the requisite possession of the disputed tracts within *716 visible bounds. The evidence in the record does not justify relief to be accorded the plaintiffs under LSA:C.C.P. Art. 3658 and the jurisprudence of this state. On the other hand the defendants, while not required to do so, have established acts of possession on their part, including the payment of taxes under the precise descriptions of the disputed property, the execution of leases for oil and gas, seismic permits for geological surveys and explorations, digging of ditches extending along the west and south boundaries of Tract III, the emplacement of 6"× 6" concrete posts at all of the corners of the two disputed quarter-quarter sections, the insertion of diamondshaped no trespassing signs at intervals of 330 feet with double signs at the corners, extending upward six to seven feet above the marsh, and the execution of hunting and trapping leases, some of which covered the entire disputed area. As a matter of fact, Harold Terracina who made the survey of the property on which the McGee plat (Exhibit D-1) is based, testified that he made use of the concrete monuments set and placed at the corners of both disputed quarter-quarter sections by Marshall K. Vignes, surveyor and employee of La-Terre, who made the survey and plat and had the ditches dug in 1958. Mr. Terracina stated that these concrete markers greatly facilitated his work in locating the land claimed by the plaintiffs.
Conceding for the purpose of discussion that character and topography of the land was such that acts of possession thereof were limited greatly to the extent that infrequent excursions into the disputed area for trapping and hunting purposes would be sufficient to maintain possession, we hold that such acts of possession by the Theriots were not exclusionary to all others, since the record abounds with evidence that La-Terre exercised acts of possession of varied and sundry sorts, over the disputed lands.
We hold that the lower court was manifestly erroneous in its finding of fact that the Theriots exercised acts of possession over the disputed property which would justify relief under the possessory action.
For the above and foregoing reasons, the judgment of the lower court in favor of the plaintiff-appellees, granting' the relief sought under the possessory action with respect to Tracts I, II and the northwest half of Tract III particularly described in this decision, is reversed and rendered, and the judgment is affirmed in all other respects.
Plaintiff-appellees are cast with the costs of these proceedings.
Reversed in part; affirmed in part; and rendered.