345 So.2d 92 (1977)
Kenneth W. GAULTER
v.
Mary Liuzza GENNARO.
No. 11232.
Court of Appeal of Louisiana, First Circuit.
March 21, 1977.
Rehearing Denied May 9, 1977.
Louis R. Koerner, Jr., New Orleans, for Kenneth W. Gaulter, plaintiff appellee.
*93 Jesse P. LaGarde, Amite, for Mrs. Mary Liuzza Gennaro.
Before LANDRY, PONDER and COLE, JJ.
LANDRY, Judge.
Plaintiff Kenneth W. Gaulter (Appellant), appeals from judgment dismissing his possessory action against defendant Mary Liuzza Gennaro (Appellee), involving a strip of land approximately 23 feet in width and running about 500 feet along the southern boundary of Appellant's estate. We affirm.
The issues presented for resolution are: (1) Did the trial court err in denying Appellant's motion for summary judgment because of Appellee's alleged conversion of the suit into a petitory action by asserting title to the disputed strip; (2) Whether the trial court erred in failing to find that Appellant established sufficient possession to support a possessory action; and, (3) Whether the trial court erred in admitting testimony concerning location of the boundary between Appellant's property and that of Appellee which bounds Appellant's estate on the south.
On April 3, 1973, Appellant filed suit alleging actual, corporeal, peaceful and continuous possession as owner, since January 10, 1970, until Appellee's disturbance thereof in July, 1972, of the following described property:
"The North ½ of the NW ¼ of the NE ¼ of Section 29, T4S, R7E, situated in the Parish of Tangipahoa State of Louisiana, LESS .30 acres in a road, 1.00 acres belonging to Joe Liuzza and LESS .31 acres in the SE corner."
Appellant also alleged the existence of a fence denoting a portion of the southern boundary of Appellant's tract and the northern boundary of Appellee's adjoining land, which fence was allegedly destroyed by Appellee on July 31, 1972, and the erection of a new fence in place thereof at a point approximately 23 feet north of the prior boundary fence. In addition, Appellant urged that the destruction of the old fence, the erection of the new fence and Appellee's clearing of the intervening strip constituted a disturbance of his possession and interfered with his use and enjoyment of his property.

APPELLANT'S MOTION FOR SUMMARY JUDGMENT
In answering Appellant's petition, Appellee generally denied Appellant's alleged possession and affirmatively asserted that Appellee erected a fence "on her own property". Appellant maintains this averment of ownership converted his possessory action into a petitory action in which Appellee, as the party claiming ownership, bears the burden of establishing title.
This issue must be determined in the light of LSA-C.C.P. Articles 3657 and 3661, which pertinently provide:
LSA-C.C.P. Article 3657
"When, except as provided in Article 3661(1)-(3), the defendant in a possessory action asserts title in himself, in the alternative or otherwise, he thereby converts the suit into a petitory action, and judicially confesses the possession of the plaintiff in the possessory action."
LSA-C.C.P. Article 3661
"In the possessory action, the ownership or title of the parties to the immovable property or real right is not at issue. No evidence of ownership or title to the immovable property or real right shall be admitted except to prove:
(1) The possession thereof by a party as owner;
(2) The extent of the possession thereof by a party; or
(3) The length of time in which a party and his ancestors in title have had possession thereof."
Appellee's simple allegation that she constructed the fence "on her property" does not constitute a formal claim of title sufficient to convert a possessory action into a petitory action. On the contrary, we find this claim is made merely in support of Appellee's claimed right to possess as owner as permitted by Article 3661(1) above. See also Haas Land Co. v. O'Quin, 187 So.2d 208 *94 (La.App. 3rd Cir. 1966); Voisin v. Luke, 234 So.2d 862 (La.App. 1st Cir. 1970).
Since Appellee's answer did not convert the action into a petitory action, the trial court properly denied Appellant's motion for summary judgment.

PROOF OF POSSESSION AND ALLEGED DISTURBANCE
To prevail in a possessory action, plaintiff must establish: (1) Possession of immovable property at the time a disturbance occurs; (2) Possession by himself and/or his ancestors in title quietly and without interruption for more than a year immediately prior to the disturbance, unless evicted by force or fraud; (3) A disturbance in fact or law; and (4) That his action was brought within a year of the disturbance. LSA-C.C.P. Article 3658.
A disturbance of possession which gives rise to a possessory action may be either a disturbance in fact or in law. A disturbance in fact is an eviction, or any other physical act which prevents the possessor of immovable property from enjoying his possession quietly, or which constitutes an obstacle to his enjoyment of same. LSA-C. C.P. Article 3659.
Possession necessary to maintain a possessory action must be either corporeal possession of an immovable or civil possession thereof preceded by corporeal possession by the possessor or his ancestors in title, by one who possesses for himself whether in good faith or bad, or even as a usurper. LSA-C. C.P. Article 3660.
Corporeal possession required to maintain a possessory action, contemplates actual possession within enclosures sufficient to establish the limits of possession with certainty, by either natural or artificial marks, giving notice to the world of the extent of possession exercised. Hill v. Richey, 221 La. 402, 59 So.2d 434 (1952).
The elements and characteristics of actual possession required to maintain a possessory action, vary with the nature of the property and other attending relevant circumstances. Hill v. Richey, above.
On January 10, 1970, Appellant and his wife purchased from the Salvatore DiVincenti heirs, a tract of land containing 29.04 acres situated in Tangipahoa Parish, bounded on the south by lands of Appellee. Appellant's lands were corporeally possessed by his ancestors in title prior to Appellant's acquisition. Similarly, Appellee's property was corporeally possessed by her predecessors in title. Both parties were in actual personal possession of their respective properties at all times relevant to this action.
At the time of Appellant's purchase, the remnants of an old fence commenced in the vicinity of the southeast corner of his tract and ran westerly a distance of about 500 feet. Appellant contends this was the boundary fence between his lands and those of Appellee. Conversely, Appellee maintains this fence was located about 25 feet south of her northern boundary and was the remains of an old cattle or garden enclosure rather than a boundary fence. The fence ran partly through a slough or low place in the land which had in effect become a thicket overgrown with hedges, briars and trees, including some pine trees and a disputed number of oak trees. This thicket extended approximately 20 to 25 feet north of the fence above mentioned. Appellant refers to the fence as the "pecan tree fence" primarily because there was a line of pecan trees in the fence area.
After purchasing his tract, Appellant leased it for farming. His lessee cultivated the land to within 5 or 6 feet north of the hedge line. Appellant, his wife and family picked berries and pecans along the "pecan tree fence line" during season, and sold their harvests from the time of Appellant's purchase until July, 1972 when Appellee's son-in-law, Benny Capdeboscq, bush hogged the thicket and removed all briars, trees, hedges and bushes. Mr. Capdeboscq also removed the fence and erected a new fence approximately 23 feet further north. The new fence runs approximately 450 feet to the west where it turns south and joins an existing fence on Appellee's property to form an enclosure for cattle. It is conceded that Appellee has had physical possession of *95 the area between the old and new fences since the latter fence was built.
Mrs. Gaulter testified she was taken on the property by one of her vendors, Louis DiVincenti, prior to her purchase of the land. She was shown a marker situated at the southeast corner of her tract from which point she noted a fence running westerly along a hedge line, including numerous pecan trees, a distance of about 500 feet. She was told this fence marked the boundary of the land. She noted the fence was made of railroad cross tie posts. She added that after purchasing, the land was leased to a tenant who farmed the land up to a point only five or six feet north of the fence line. She further stated that during season she and her family picked pecans and berries from the bushes and trees on the fence line.
Appellant's version of the location and condition of the slough, fence and overgrown area was corroborated by two of Appellant's vendors, Rose DiVincenti Genusa and Luis DiVincenti, both of whom were very familiar with the land. Mrs. Genusa stated the pecan tree fence had been considered the boundary for more than 60 years, although she had not been on the land in the last two or three years. She recalled a large pecan tree at about the midway point of the fence. Mr. DiVincenti admitted he had not been in the area in question during the last 20 years. He was aware that a pecan tree grew in the fence line; that the fence ran through a slough partially on Appellee's property. Although he had no knowledge of the location of the new fence, he was emphatic in the statement that it if were moved anywhere beyond the location of the old fence, it was on someone else's property.
Charles Edwards, County Executive Director, U.S. Department of Agriculture, was tendered by Appellant as an expert in the interpretation of aerial photographs. From such photographs taken November 13, 1967, he fixed the southerly limits of cultivation by Appellant's ancestors in title. We find his testimony of doubtful probative value, principally because the scale of the examined photographs was one inch to 660 feet, and Mr. Edwards conceded he could not locate the pecan tree fence in the pictures. He also acknowledged that the scale made it very possible to err a few feet in either direction in attempting to fix the limits of cultivation.
Appellee's brothers, Steve and Henry Liuzza, testified in essence that the true boundary fence disappeared some 30 to 35 years ago. They stated that neither Appellant nor his ancestors in title cultivated the area between the pecan tree fence and the new fence within the past 15 years, and that Appellant's tenant cultivated only to the new fence line. They also stated the strip in dispute was covered with briars, and that the only pecan trees ever in the area are those situated approximately 25 to 50 feet south of the new fence, which fence was erected on the basis of a survey made at Appellant's request.
Clifton Webb, Surveyor, was called by Appellee. He testified over Appellant's objection, that he was requested by Appellant to retrace Appellant's lines and locate the corners of Appellant's property. Using prior surveys, he found markers delineating the western boundary. He could not, however, find eastern boundary markers where the previous surveys indicated they should be. He located what he believed to be the southeast and southwest corners of Appellant's tract. He found the southeastern corner fell south of the new fence, and the southwestern corner fell north of the new fence line. He concluded the new fence did not run parallel to the southern boundary because it intersected and crossed his projected southern boundary.
Appellant relies on the principle that possession of the part by the record owner of property constitutes possession of the whole. On this basis, it is contended that since Appellant has had possession through his ancestors and on his own since his acquisition, he is deemed to possess to the limits of his land. Bolding v. Eason Oil Company, 248 La. 269, 178 So.2d 246 (1965). While we recognize the principle as well established law, we deem it not controlling in this instance. *96 We so find because Appellee, being equally in possession of her adjoining tract, may also urge and claim the benefit of this same rule. We deem it further evident that in a case of this nature, possession must depend upon actual physical possession of a nature sufficient to give notice that the occupier intends to possess to limits, either natural or artificial, and which may be determined with reasonable certainty.
The trial court did not favor us with written reasons for his judgment. Since Appellant's demands were rejected, we assume the trial court concluded Appellant failed to establish the nature and type of possession required by law, because all other elements of a possessory action appear to have been conclusively established in this instance.
We concur in what we believe to be the basis of the trial court's decision. Appellant's alleged possession of what amounts to a hedge line and overgrown area separating adjoining lands is nebulous to some degree. The mere seasonal picking of berries and pecans along an overgrown hedge line area separating adjoining estates, situated at the rear of each property is not sufficient public notice to support a possessory action. We find this especially so where, as here, the type of possession exercised is not sufficient to indicate with reasonable certainty the extent of possession intended.
We find no merit in Appellant's contention that the trial court erred in admitting testimony concerning the location of the boundary between the adjoining estates. The trial court properly admitted this testimony on the premise that in a possessory action, evidence of title or ownership is admissible for the restricted purpose of showing possession by a party as owner, and the extent and duration of such possession. LSA-C.C.P. Article 3661.
The judgment of the trial court is affirmed at Appellant's cost.
AFFIRMED.