493 So.2d 253 (1986)
Dealos ARMSTRONG, et al., Plaintiffs-Appellees,
v.
Douglas ARMSTRONG, et al., Defendants-Appellants.
No. 85-168.
Court of Appeal of Louisiana, Third Circuit.
August 18, 1986.
Writ Denied November 7, 1986.
*254 Dee D. Drell, of Gold, Simon, Alexandria, for defendants-appellants.
W.T. Armitage, Jr., Alexandria, for plaintiffs-appellees.
Before DOMENGEAUX, STOKER, DOUCET, YELVERTON and W.C. FALKENHEINER, JJ.[*]
W.C. FALKENHEINER, Judge Pro Tem.
This is a possessory action (Code of Civil Procedure Articles 3655, et seq.) wherein Plaintiffs claim that they possess nineteen acres of land in Grant Parish adverse to the Defendants who hold the record title. All litigants are heirs of Stephen Armstrong who acquired a one hundred and forty acre tract of land in Grant Parish in 1921. Stephen Armstrong died in 1925, survived by his widow and children. The widow is now also deceased. The Plaintiffs are all of the heirs of Stephen Armstrong with the exception of Douglas Armstrong and his children who are the Defendants.
Shortly after Stephen Armstrong's death, Douglas, the oldest child, filed a suit against his mother and co-heirs claiming that all of the one hundred and forty acres was taken in Stephen's name as a matter of convenience, but that he actually had acquired and owned forty acres more or less of the property. This litigation was uncontested, and Douglas obtained a record title in 1928 to the northeast quarter of the northwest quarter (NE 1/4NW 1/4), west of Little River, and ten acres in the south portion of the northwest quarter of the northwest quarter (NW 1/4NW 1/4) of Section 27, Township 9 North, Range 1 East, Grant Parish, Louisiana, containing forty acres, more or less. Douglas's land is one contiguous tract containing approximately forty-seven actual acres.
Douglas took corporeal, open and actual possession of the property, built a house on it, farmed a portion of it, and lived on it with his family until 1947 when he moved to Baton Rouge. After moving to Baton Rouge, Douglas and his children (his wife had died) continued to visit the property intermittently. They came annually for dinner on the grounds at the family cemetery, *255 some camped on the property at times, some picked berries, and some hunted.
Plaintiffs, for the most part, continued to live in the vicinity of the property on the old Stephen Armstrong Estate. Several of them acquired title to portions of the old Stephen Armstrong property, and the remaining portion of the original tract remains undivided and is called "heir property".

THE NATURE OF THE LAND INVOLVED
In cases of this nature, the location, physical characteristics and nature of the land must be considered, along with the particular relationship of the parties with respect to the land and each other, and all other applicable circumstances. In this case, the one hundred and forty acre Armstrong tract lay generally along the west side of Little River. The land consisted of hill land and Little River bottom land. The Armstrong family resided on the hill land and kept its fields and pastures there. The bottom land was subject to frequent flooding and was left in timber, cypress brakes and sloughs. The bottom land was used to some extent for the purpose of running hogs and cattle and cutting firewood, pulpwood and timber. The family also used it for hunting and other outdoor activities. The bottom land was bounded on the east by Little River and on its other sides primarily by Armstrong Estate land in the hills, and there were no fences or other improvements located on it.
The forty-seven acre tract deeded to Douglas had the same general characteristics as the Estate property, that is, some was hill land and some was bottom land. The particular nineteen acres at issue here is the north nineteen acres of the northeast quarter of the northwest quarter (NE 1/4 NW 1/4) of Section 27, and is all bottom land, except a small tract in the northeast corner which is part of an old field extending south from that portion of the Stephen Armstrong Estate property in Section 22 to the immediate north.
There are no fences or other obstacles separating Defendants' bottom land from the balance of the Estate bottom land except for Plaintiffs' allegations with respect to an "imaginary line" identified as the south boundary of a cypress brake.

THE ISSUE
The issue in this case is whether or not Acts of Possession exercised by the Plaintiffs on Defendants' property entitle them to judgment in a possessory action.

APPLICABLE LAW
The Court in Plaisance v. Collins, 365 So.2d 608 La.App. 1st Cir.1978 made the following summary which is appropriate here:
"Possession necessary to maintain a possessory action must be either corporeal possession, or civil possession preceded by the possessor or his ancestors in title. LSA-C.C.P. art. 3660; Liner v. Louisiana Land and Exploration Company, [319 So.2d 766, La. (1975) ]; Gaulter v. Gennaro, [345 So.2d 92 (La.App. 1st 1977)]. The possessor must possess as owner, or be `one who possesses for himself', as the Code of Civil Procedure, Article 3656, expresses it. See Grant Timber and Manufacturing Company v. Gray, 131 La. 865, 60 So. 374 (1912). See also Louisiana Materials Company, Inc. v. Cronvich, 258 La. 1039, 249 So.2d 123 (1971)." (Emphasis supplied and citations added.)
The possession required to bring a possessory action is considered as the same possession required to commence the running of acquisitive prescription. Norton v. Addie, 337 So.2d 432 (La. 1976); Liner v. Louisiana Land and Exploration Company, supra. Thus, the Civil Code approach to "possession" is found in LSA-C.C. arts. 3426 and 3438 (Possession is the detention or enjoyment of a thing which a possessor exercises himself or through another person who exercises it in the possessor's behalf); LSA-C.C. art. 3427 (The two different *256 kinds of possession are natural and civil); LSA-C.C. arts. 3428 and 3430 (Natural possession is corporeal detention, such as occupying a house or cultivating ground); LSA-C.C arts. 3429 and 3431 (Civil possession is legal detention by virtue of title and with intent to possess as owner, such as ceasing to occupy a house or cultivate ground without intent to abandon the right of possession); and LSA-C.C. art. 3436 (Two distinct things are required in order to be able to acquire possession: intention of possessing as owner and corporeal detention of the thing). When possession is once acquired by corporeal detention, possession is preserved by the intention of possessing, although the possessor "may have ceased to have the thing in actual custody." LSA-C.C. art. 3442. The intention of retaining possession is presumed to continue until a contrary intention is definitely shown. LSA-C.C. arts. 3443 and 3444. However, a possessor may lose possession "against his consent" if he is forcibly ejected or prevented from returning or allows his property to be usurped for a year without doing "any act of possession." LSA-C.C. art. 3449. He may also lose possession by transferring or abandoning it. LSA-C.C. art. 3448.
Our Civil Code provisions make it clear that one who has acquired corporeal possession continues in possession until he transfers it or abandons it, or until another expels him from it, or until he allows the land to be usurped and held for a year without doing any act of possession or without interfering with the usurper's possession. Liner v. Louisiana Land and Exploration Company, supra.

Our Civil Code also clearly points out that corporeal detention of each foot of land by one who claims under a title is unnecessary for a possessor to have corporeal possession of the land. LSA-C.C. art. 3437. It is sufficient for a possessor to enter upon and occupy a part of the land, if he has the intention of possessing all of the land within the boundaries; it is not necessary that he "pass over every part of it." LSA-C.C. art. 3437.
Moreover, when a tract of land is acquired under a title, the corporeal possession of a part is equivalent to the possession of all the property within the limits or boundaries described in the title, LSA-C.C. art. 3498; Marks v. Collier, 216 La. 1, 43 So.2d 16 (1949); see also Bolding v. Eason Oil Company, 248 La. 269, 178 So.2d 246 (1965); Leader Realty Company v. Taylor, 147 La. 256, 84 So. 648 (1920); Zeringue v. Blouin, 192 So.2d 838 (La.App. 1 Cir.1966), writ refused, 250 La. 100, 194 So.2d 98 (1967).
(Emphasis supplied.)
(Note: The Civil Code Citations referred to above relate to the Code as it existed prior to the 1982 revision. The current law is found in Title XXIII, Articles 3412 through 3444 and Title XXIV, Articles 3445 through 3554. Title XXIII deals with Occupancy and Possession and Title XXIV deals with Prescription.)
Thus, these Defendants, who had corporeal possession of their property to the full extent of their title, are presumed to continue in that possession until, (a) they transfer it, (b) they abandon it, (c) they allow another to expel them from it, or (d) they allow the land to be usurped and held for one year without doing any act of possession or interfering with the usurper's possession.
Plaintiffs in this case seem to base their case upon the strength of their allegedly adverse and hostile possession, along with the claim that Douglas, by virtue of his testimony at the trial, indicated an intent to abandon the property. It therefore appears that Plaintiffs are asserting that factors (b) and (c) above apply.
Before discussing the Plaintiffs' acts of possession, the Defendants' acts of possession, the import of Douglas's testimony, and any other facts in the case, we make note of the obligation of this Court not to disturb the factual findings of the Trial Court in the absence of manifest error. (Canter v. Koehring Company, 283 So.2d *257 716 (La.1973). That obligation is particularly pertinent to this case because of the nature of this record. Many of the witnesses were elderly, were obviously confused by the land descriptions and maps shown to them, and often contradicted themselves. The Trial Court was obviously in much better position to evaluate this testimony than are we. Although we have reservations in one or two instances, we find no manifest error in the findings of the Trial Court, but we do reach a different conclusion as to the result to be reached when we apply the applicable law to those facts.

DOUGLAS'S TESTIMONY RELATIVE TO ABANDONMENT AND DEFENDANT'S POSSESSION
Plaintiffs place considerable reliance upon the testimony in Court of Douglas Armstrong to the effect that his property corner was marked by X marks on the trees on its western boundary, his identification of the X mark near the western end of the "imaginary line" on a map shown him by defense counsel as his corner, and his testimony that he did not claim any property north of a cypress brake.
Exhibit P-1, a copy annexed as an exhibit to this opinion, is a plat of the property involved. The "imaginary line" (Plaintiff's term) is shown on this exhibit as a straight line running from the west boundary of the quarter quarter section east toward Little River. The Trial Court found that Plaintiffs had proved possession of the nineteen acres of the quarter quarter section lying north of that "imaginary line".
The record also reveals that there are two corner markings on the west boundary line of the quarter quarter section. Both of these corner markers are identified in the usual manner by Xs on trees. The northerly corner marks the northwest corner of the quarter quarter section. The southerly marker, which is located near the west end of the "imaginary line", is also the northeast corner of lot number 3 shown in Defendants' Exhibit 3. Lot number 3 was a 5.6 acre tract acquired by one of the other Armstrong heirs located in the northwest quarter of the northwest quarter of the same section, immediately north of that portion of the same quarter quarter section owned by Douglas and immediately west of the quarter quarter section in which the disputed land is located.
The Trial Court was obviously of the opinion that Douglas was referring to the southerly corner marking on the western boundary of his quarter quarter section, and that he was also referring to the "imaginary line" which Plaintiffs assert to be the south edge of a cypress brake. With reservations, we accept the finding of the Trial Court on those points, although Douglas's testimony indicates that he might have been referring to the northerly corner, and that his testimony about the cypress brakes was made from maps that clearly confused him. Nevertheless, there is also strong testimony by Douglas that he intended to possess, and did possess, all of the property to which he had title except any parts of which were located in the old field. The old field is part of the Stephen Armstrong Estate located to the north of this quarter quarter section, a small portion of which protrudes to the south into the northeast corner of the quarter quarter section as shown on Exhibit P-1.
One holding title to property cannot be presumed to abandon it, and any indication that he intends to do so, should be by strong and convincing evidence. (See Plaisance v. Collins, Supra, and the authorities cited therein.)
With due deference to the Trial Court, we can find no such evidence in this case from Douglas's testimony. We cannot find that this record indicates that Douglas intended to abandon and renounce nineteen acres of his land. His testimony indicates the exact opposite, although it is admittedly at times confusing and contradictory. In spite of his testimony on cross-examination with respect to the specifics such as the corner marking and the cypress brake, he stoutly maintained that he possessed all of the property to which he had *258 title, although he never claimed any portion or interest in the old field other than his interest as a co-heir.
After 1947, the possession of Defendants changed since they no longer lived on the land, but they did continue to exercise acts of possession compatible with the nature and characteristics of the property. In fact, their acts of possession were generally similar to those of the Plaintiffs who continued to live nearby, although not as frequent or as comprehensive.
Nevertheless, conceding only for this limited purpose that Plaintiffs were usurpers, rather than possessors with the knowledge and approval of Douglas, i.e., precarious possessors, this record does not reflect that Defendants allowed their land to be usurped by Plaintiffs and held for one year without doing any act of possession or without interfering with usurpers' possession. (Liner v. Louisiana Land and Exploration Company, Supra.) Defendants continued to visit the old homeplace without any problems. In addition to their physical acts of intermittent possession, Defendants continued to pay taxes on the property annually and it remained assessed to them.
Douglas's children did not testify with respect to any abandonment of the property. We are therefore of the opinion that the presumption that Douglas and his heirs, as the legal owners, intended to retain possession and ownership continues to be viable and has not been rebutted. We are also of the opinion that Douglas and his children have not abandoned the property. (Mire v. Crowe, 439 So.2d 517 (La.App. 1st Cir.1983)).

PLAINTIFFS' POSSESSION
Plaintiffs contend that the possession exercised by them was of such character as to constitute a usurpation by them of the Defendants' right of ownership and possession. If Plaintiffs are to be considered as usurpers to the extent necessary to qualify them to use the possessory action, their possession must be such as to reflect their express intent to possess as owner which is made manifest to the record title owners, and there must be corporeal detention of the property to the exclusion of the record title owners. We have heretofore expressed the opinion that Plaintiffs' detention or possession activities on the property did not exclude acts of possession by the Defendants, and the Trial Court made no such findings. Furthermore, Plaintiffs themselves admitted in the record that Defendants continued to have the right to come onto the property, and that they never challenged their activities. (See Civil Code Articles 3424 and 3476. Note that Civil Code Article 3476 requires corporeal possession to be continuous, uninterrupted, peaceable, public and unequivocal.)
The intent to possess as owner cannot be covert and must be express. Although it may be implied if there is open, notorious, public, continuous and uninterrupted possession, which has to be to the exclusion of the owners, there must be strong evidence that gives the owner some notice that his property is in jeopardy. This requirement has been explained by Judge Tate in the case of Hebert v. Chargois, 106 So.2d 15 (Court of App. 1st Cir. 1958)):
"In a possessory action, "The actual disturbance * * * must be accomplished by some actual deed or act that `brings home' to the `actual possessor,' realization that his dominion is being seriously challenged," Pittman v. Bourg, 179 La. 66, 74, 153 So. 22, 24. See, e.g., Jones v. Goss, 115 La. 926, 40 So. 357". (Emphasis supplied.)
In this case there were simply never any acts by the Plaintiffs which would "bring home" to Douglas and his children the fact that they intended to take this property for themselves. (See comment in 58 Tulane Law Review, page 573, et seq.)
Plaintiffs call attention to the fact that their adverse claim here is not directed against the Defendants's co-ownership with them as Armstrong heirs, but is directed against their claim of separate ownership. *259 For purposes of evaluating the evidence, the Court is required to consider all of the peculiar and particular facts and circumstances involving this case so as to determine the legal effect of the various actions of the parties. The circumstances of co-heirship and ownership of adjoining property, the fact that the family resided as neighbors on apparently good terms until this controversy arose, and the use of the bottom land in common, are all relevant evidence in the case and are required to be considered in the evaluation of the possessory actions of the parties.
No inference of hostility can be made by virtue of the fact that Douglas acquired his title to this property through the lawsuit since it was uncontested and all parties apparently agreed with Douglas that he acquired his original interest in the property at the time his father bought it.
Plaintiffs rely strongly upon the 1938 timber sale by Mrs. Armstrong to Whatley. According to them, it established their adverse possession and created the "imaginary line". They allege that Whatley cut the timber on the Armstrong Estate property and cut over the line onto the Defendants' property down to the "imaginary line". This was a verbal sale by Mrs. Armstrong, and no recorded instrument or written record of the sale was ever made. The principles announced in Civil Code Article 3478 and the case of Franks Petroleum Company v. Babineaux, 446 So.2d 862 (La.App. 2 Cir.1984) are not applicable in this case.
Plaintiffs have never explained how this action of Mrs. Armstrong, who is now deceased and is not a party to this litigation, is somehow evidence of their adverse and hostile possession. Pretermitting that question, it is readily apparent that the fact that Douglas joined with all of his co-heirs in allowing their mother to cut timber on the adjoining Estate land without protest, and also allowed her to overcut a short distance into his property without protest, should not be evaluated as evidence of hostile possession. This is particularly true in view of Douglas's unrebutted statement that his mother needed the money more than he did, and the overcutting was with his approval. The fact that he did not prohibit his family members from going onto his bottom land property is also no evidence of either abandonment or recognition that their activities were hostile to him. It simply was acquiescence on his part of long-standing usages of the property. Repeating the language of Judge Tate, the Plaintiffs in this case simply did nothing to "bring home" to Defendants that they were claiming exclusive ownership of this property or ownership for all of the co-heirs to the extent of "seriously challenging their dominion". (Hebert v. Chargois, supra.)
It should also be noted that there are a number of Plaintiffs in this case, all of whom did not testify. Those who did testify, and describe certain of their acts of possession, did not specify that these acts of possession were for themselves individually, but seemed to imply that they were acting for and on behalf of all of the Armstrong co-heirs, including Douglas. No attempt was made to specify any undivided fractional interests to be allotted to each of the alleged adverse possessors, nor did any Plaintiff make a specific claim to possess an identified portion of Defendant's land for himself. It seems that they were making a claim for the Estate of all land north of the "imaginary line".
Plaintiffs' possession, within the content of the Civil Code, was precarious (Article 3437) and suffered from one or more of the vices of possession (Articles 3435 and 3436).
It was precarious because it was with Defendants' permission or tolerance. Acts of simple tolerance by Defendants toward their fellow family members and by Douglas, in conjunction with Plaintiffs, toward their mother in the 1938 timber episode form no basis for a claim of adverse possession. The law looks with favor on acts of tolerance between neighbors or strangers and the same reasoning applies in cases of family relationships. French *260 Commentators expressed this view this way:
"Yet, it is easier to define acts of simple tolerance than those of pure faculty. The former are those which a good neighbor tolerates, although they represent a certain encroachment on his ownership rights. This encroachment does not seem to him sufficiently serious to represent a usurpation which should be repressedfor instance, if my neighbor comes to my land to take water or enters my forest to collect mushrooms. These are acts which can give a certain advantage to one party without causing appreciable damage to the other; hence it would be acting in ill will to oppose them. But the law considers the owner as tolerating them in the form of a precarious concession. Consequently he is deemed to reserve to himself the right to stop these acts when he feels it to be convenient. This is the reason why such acts can not give to their beneficiary a possession useful for the purpose of prescription. Prescription requires possession by ownership title. If the law were different, each owner would have to suppress the slightest encroachments on his property rights because of the fear that they could lay a basis for a prescription against him. Good neighborly relations would thus be upset. It has been held along these lines that an authorization to make openings in a party wall, obtained under the condition that they be closed and eliminated on simple notice by the party who authorized them, is an act of simple tolerance which can not lead to prescription."
(Louisiana State Law Institute, Civil Law Translations, Volume 5, Baudry-LaCantinere & Tissier, Prescription, Vol. XXVII, Nos. 1-815 4th ed. 1924, Section 282, at pg 149.)
Plaintiffs' possession, insofar as the intent to possess as owners adverse to Defendants, also suffered from the vices of possession. It was clandestine because its purpose was covert and not made manifest to Defendants. It was discontinuous because it was irregular, intermittent, and not exercised at regular intervals, and it was equivocal for all of the reasons heretofore stated.
Civil Code Articles 3435 and 3477 state flatly that neither precarious possession, or possession with any one or more of the vices, can have any legal effect.

CONCLUSION
For the reasons stated, we are therefore of the opinion that Plaintiffs' possessory action must fail. Although Douglas may have renounced any interest in that small portion of the old field in the northeast corner of his property, the old field remained the Estate property of which Douglas was a co-owner with the right to possess along with all of his co-heirs. Since the Plaintiffs' alleged adverse possession was for the benefit of all the co-heirs, the recognition of a possessory action against Douglas as to this property in which he retained an undivided ownership would be inappropriate. Any questions relative to the exact limits of Douglas's property and the remaining Estate property in the old field would be more properly settled in a boundary action. (Civil Code Articles 784, et seq.)
The judgment of the Trial Court is therefore REVERSED, at Plaintiffs' cost.
REVERSED.
DOUCET, J. dissents and assigns written reasons.
*261 
*262 DOUCET, Judge, dissenting.
This appeal concerns a family dispute over possession of a piece of property located in Grant Parish.
The plaintiffs claim that they are in corporeal possession of the Northern Half of the Northeast Quarter of the Northwest Quarter of Section 27, Township 9 North, Range 1 East, Grant Parish, Louisiana, by virtue of continuous acts of physical possession. The defendant also claims corporeal possession of the entire Northeast Quarter of the Northwest Quarter by virtue of acts of physical possession. Alternatively, he claims to be in constructive possession of this area because he has actual possession of the southern part of the tract, and has title to the entire area.
On June 16, 1982, the plaintiffs, Dealos Armstrong, Robert D. Armstrong, Tina Armstrong, J.M. Armstrong, Wilmir Armstrong, Dorothy Nell Armstrong Dugas, Mellie Armstrong Henderson, Denise L. Austin, Marsha A. Sullivan, Tracy Gayle, Janice R. Desoto and Herbert M. Parnell, filed a possessory action against Douglas Armstrong. By that action, they alleged possession of the disputed property for over a year. They further alleged a disturbance in possession by the acts of Douglas Armstrong in causing timber on the disputed property to be marked, with the intention of cutting and selling it. Finally, they asked to be maintained in, or restored to, peacable possession. The matter was heard on October 10, 1984. The court rendered judgment in favor of the plaintiffs finding them to be in possession of all land in the Northwest Quarter of the Northeast Quarter located north of the southern-most point of the cypress break located there. The defendant appeals.
The defendant first argues that the trial court erroneously excluded from evidence a pasture lease by the defendant, Douglas Armstrong, to Dealos Armstrong. However, according to the property description contained in the lease, it affected an entirely different piece of property than that which is the subject of this lawsuit. Therefore, it is not relevant to this case and was properly excluded. The defendant also argues that an abstract of the property made in 1929 by Mr. C.D. LaCroix should have been admitted into evidence. However, I find that if any error was committed in excluding this document, it was harmless error, because title to the property is not at issue here.
In addition, the defendants dispute the trial court's findings with regard to possession. Possession under the code is the detention or enjoyment of a thing which one holds either by himself or by another who keeps it in his name. La.C.C. art. 3426.[1] In order to acquire possession, it is necessary to have the intention to possess and the corporeal possession of the property. La.C.C. art. 3436.[2] A person is presumed to have possessed as owner unless he began to possess in the name of, or for, another. La.C.C. art. 3488.[3]
In his reasons for judgment, the trial judge found as follows:
"The evidence taken as a whole shows that the plaintiffs have exercised continuous physical possession, well in excess of a year, of all the land north of the "cypress break"; that the defendants have occasionally trodden on the land north of the "cypress break" but have exercised neither the kind nor degree of physical possession necessary to constitute corporeal possession; that the respective acts of possession of each side has been in each side's own behalf and not precarious; and that in 1928 a judgment granted title of the entire quarter to Douglas Armstrong, (the principal defendant).
*263 It should be noted that title to this land is itself not at issue, nor is this subject proper in a possessory action. The issue of title is relevant here only to establish a claim of constructive possession.
Defendants maintain that because they hold a deed translative of title, any act of possession on their part amounts to constructive possession of the whole, and they are presumed to possess to the full extent of their title. La.C.C. Art. 3426 Lewis v. Standard Oil Company, 154 La. 1048, 98 So. 662 (1923); Rhodes v. Collier 215 La. 754, 41 So.2d 669 (1949). However, the constructive possession of the defendants was defeated by the adverse corporeal possession of the property by the plaintiffs. It is well settled in this state that possession of a part is possession of the whole until the possessor is ousted by counter actual corporeal possession. Hanna v. Green, 329 So.2d 850 (La.App. 2nd Cir. 1976); Norton v. Addie, 337 So.2d 432 (La. 1976); Liner v. Louisiana Land and Exploration Company, 319 So.2d 766 (La. 1975).
For there to be adverse possession it is essential that it be open, notorious and the bounds be clearly marked, giving notice of the character and the extent of possession Liner [supra]; Hill v. Richey 221 La. 402, 59 So.2d 434 (1952). The evidence shows such adverse possession originated as far back as 1928 when the plaintiffs commenced cutting timber to definable bounds, at the level of the "cypress break". The evidence further shows that this activity continued for many years effectively interrupting and defeating whatever constructive possession the defendants had and establishing the plaintiffs legal possession. In addition the evidence shows that the plaintiffs have continued to present to exercise corporeal dominion on the land through the various activities mentioned at trial. Moreover, this fact was not disputed by the defendant; instead he admitted on the stand that he thinks his property does not extend past the "cypress break".
"When there is evidence before the trier of fact which, upon its reasonable evaluation of credibility, furnishes a reasonable factual basis for the trial court's finding, on review the appellate court should not disturb this factual finding in the absence of manifest error. Stated another way, the reviewing court must give great weight to factual conclusions of the trier of fact; where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. The reason for this well-settled principle of review is based not only upon the trial court's better capacity to evaluate live witnesses (as compared with the appellate court's access only to a cold record), but also upon the proper allocation of trial and appellate functions between the respective courts." (Citations omitted)
Canter v. Koehring Co., 283 So.2d 716 (La.1973).
An analysis of the record on review convinces me that the trial judge had an adequate factual basis for its conclusions. Since a review of the record reveals no manifest error, this court may not disturb the findings of the trial court.
Accordingly, the judgment of the trial court should be affirmed.
NOTES
[*] Honorable W.C. Falkenheiner of the Seventh Judicial District Court participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.
[1] This article was repealed effective January 1, 1983. It was replaced by art. 3421. The law was not changed.
[2] This article was repealed effective January 1, 1983. It was replaced by art. 3424. The law was not changed.
[3] This article was repealed effective January 1, 1983. It was replaced by art. 3427. The law was not changed.